BERTHA E. PETTIT *vs.* HOWARD & BULLOUGH AMERICAN
MACHINE Co. & N. Y., N. H. & H. R. R. Co.

JUNE 26, 1918.

PRESENT:   Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

(1)   *Negligence.   Common Carriers.   Evidence.   Custom.*

In an action for negligence against a railroad, arising out of an accident on the
premises of a factory using a spur track to receive freight, evidence tending
to prove a custom on the part of the factory to station a flagman at the
crossing of the spur track at a delivery door at such times as an engine was
in its yard engaged in switching cars, was admissible, although not con-
clusive on the question of the alleged negligence, for the test of liability is
not whether the train was operated in the usual and ordinary way and
according to custom established between the railroad and the factory, but
whether it was handled with ordinary care—such care as a person of ordinary
prudence would use in the same circumstances.

(2)   *Negligence.   Common Carriers.   Custom.   Negligence.   Direction of Verdict.*

In an action for negligence against a railroad, arising out of an accident on
the premises of a factory using a spur track to receive freight, it appeared in
evidence that the engineer knew of the location of the crossing of the spur
track at a delivery door and of the danger to be apprehended from the
nature of the surroundings at this place, and there was nothing to show any
necessity for the engineer to continue to look backward toward the rear
of the train away from the direction in which it was moving; and evidence
was also introduced of a custom on the part of the factory to station a flag-
man at the crossing when an engine was engaged in switching in the yard.
*Held,* that the question of defendant's negligence was one of fact for the jury,
and it was error to direct a verdict for defendant on the ground that it had
the right to assume the track would be guarded and as the engineer did not
become aware of the danger until too late to avoid the collision, it was not
guilty of negligence.

TRESPASS ON THE CASE for negligence.   Heard on ex-
ceptions of plaintiff and exception to direction of verdict
sustained.

STEARNS, J.   This is an action of trespass on the case for
negligence against the Howard & Bullough American
Machine Co. and the New York, New Haven & Hartford
R. R. Co. who are joined as defendants by the plaintiff
under the provisions of Section 20, Chapter 283, General
Laws (1909).

The plaintiff was engaged in the teaming and express business in which she used an automobile truck. At the time of the accident complained of, this truck was in the charge of and was operated by her husband, Frank Pettit, who was engaged in conducting the business of his wife. On the 5th day of August, 1916, at about eleven o'clock in the morning, Pettit drove the truck into the mill yard of the machine company in order to deliver two large boxes of bolts and screws to the machine company. The factory of this company is located north of the main line of the railroad company, just beyond the city of Central Falls. Between the machine company plant and the railroad right of way there is a fence. A spur track runs from the railroad right of way into the yard and over the land of the machine company, extending in a northwesterly direction and then curving through the southwest corner of the building of the machine company plant, then in a sharp curve to the north and northeast up into their yard, where it ends. The place where the sidetrack goes through the corner of the building of the machine company is described by the witnesses as "a sort of tunnel;" at the north end of the so-called tunnel there is a delivery door to which Pettit was going to back up his truck to deliver his freight. About ninety feet north of this door was another fence, dividing the machine company yard in two parts. To the north of the delivery door and on the same side of the track was a covered platform and certain buildings which obstructed the view from the delivery door in the direction of the end of the spur track.

Pettit came in from the west, approached this door, turned his machine around, backed up to the door, shut off the power in his motor and left his truck standing across the spur track, which was necessary if he was to unload at this door. Pettit had made deliveries at the factory several times before and had been directed by the machine company to make all deliveries at the door mentioned.

Some three or four minutes before Pettit drove his car into the yard, a switching engine of the railroad company

had brought six loaded freight cars consigned to the machine company into the company yard on the spur track and had taken the same to the other end of the yard. There was an upgrade from the delivery door to the end of the yard, and as the load was too heavy for the engine, it was found to be necessary to leave a number of the cars in charge of a part of the train crew on this grade, and to detach three loaded cars and return them to the main line in order that the engine then might return and push the cars onto a trestle where it was proposed to leave them. It was while the engine was thus proceeding back to the main line with the three loaded cars that the collision occurred which resulted in the destruction of plaintiff's motor truck and for which this action is now brought.

Pettit testified that no notice was given to him of the approach of the switching engine until after he had driven on to the spur track and had stopped his motor; that an employee of the machine company then warned him of the fact that the train was approaching but that it was too late then for him to start his motor and run it off the track; he immediately left his car and ran to a position where he could see the engine approaching; he shouted and made signals for the engine to stop; at this time the engine was some distance away and could then have been stopped. The engineer who was on the righthand side of his cab and on the outside of the curve in the spur track, was looking backward and continued to look toward the rear of his train and consequently did not see Pettit who continued to make signals to stop. The fireman of the engine testified that when he saw Pettit on the track he notified the engineer to stop; that the whistle was then blown and brakes applied and both fireman and engineer jumped from the engine just before it struck the truck. Pettit and other witnesses testified that the train was coming down grade and was moving at the rate of about 20 miles an hour. Other witnesses for the defendant railroad company testified that the engine was going at a less rate of speed, at the usual speed, or 6 or 7

miles an hour.   The driver of a wagon which was standing
in the yard near the track and not far from the fence north
of the delivery door testifies that he saw Pettit making
signals and that he also tried to warn the engineer but was
unable to communicate with him because the engineer was
looking backward.   The engineer of the defendant railroad
company had run a switching engine into and on the premises
of the machine company for a number of years.   He knew
the location of the delivery door referred to and the use that
was made of it.   If he had been looking ahead in the direc-
tion his engine was going, he would have seen Pettit and
could have stopped in time to avoid the collision.

The first count of the declaration against the machine
company is bad for uncertainty and for a failure to allege
the duty which plaintiff claims that the machine company
owed to her.   Some word or phrase is lacking in this count
with the result that there is no intelligible statement of the
precise nature of the plaintiff's claim.   The defendant
machine company demurred to the first count of the declara-
tion and this demurrer was sustained by the trial court and
exception was taken to the ruling by the plaintiff.   The
demurrer of the defendant machine company to this count
was properly sustained.

The second count, which is against the defendant railroad
company, alleges that the train was proceeding at a high
rate of speed; that it was the duty of the defendant railroad
company to give proper warning of the approach of said
locomotive and cars "and that in consequence of the said
failure and neglect of said defendant corporation to give
the plaintiff due and proper warning and notice of the
approach of said locomotive engine and cars back along said
track around said curve by and in front of said doorway in
time to prevent said motor truck being driven upon said
spur track and up to said doorway or in time to enable the
driver thereof to move said motor truck away from said
doorway and off of said track upon the approach of said
train," said train struck and ruined the motor truck.

The case against the defendant railroad company was tried before a jury on the second count and at the conclusion of the testimony the trial judge, at the request of the defendant railroad company, directed a verdict for the defendant.

The plaintiff is now before this court on her bill of exceptions in which she alleges that the trial court erred in each of the two above mentioned rulings and also that certain errors were made in regard to the admission of evidence during the trial. The plaintiff objected to the admisssion of testimony tending to prove a custom on the part of the machine company to station a flagman at the crossing of the spur track by the north delivery door at such times as the engine was in the yard and engaged in switching cars. Later in the trial the evidence of this custom was presented to the jury by the defendant railroad company without objection by the plaintiff and in her brief plaintiff relies, in part, on the existence of this custom to establish her claim. (1) The plaintiff presumably does not intend to press this objection and we think on the record there is a waiver of the objection. There was no error, however, in the admission of the evidence in regard to this custom. The proof of the customary manner of carrying on switching operations in the yard is relevant but not conclusive on the question of the alleged negligence.

In *Texas & Pacific Railway Co.* v. *Behymer,* 189 U. S. 468, at p. 470, Mr. Justice Holmes states the rule in regard to such testimony as follows: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not."

The test of the liability in this case is not whether the train was operated in the usual and ordinary way and according to custom established between the railroad company and the machine company, but whether it was handled with ordinary care, that is with such care as a person of ordinary prudence would use in the same circumstances. The fact

that a flagman was stationed near the crossing by the delivery door is relevant, and material in the decision of the question whether or not the engineer was using due care in the operation of the train in the circumstances as disclosed by the evidence.   The trial court held that as the machine company had undertaken to guard the spur track the railroad company had a right to assume that it would be guarded and as the engineer did not become aware  of  the danger until it was too late to avoid the collision, as a matter of law, the defendant was not guilty of negligence.

(2) We think that the question of defendant's negligence was a question of fact for the jury.   There is nothing in the evidence which shows that there was any necessity for the engineer to continue to look toward the rear of his train and away from the direction in which his train was moving.   He knew of the location of the crossing at the delivery door and of the danger to be apprehended from the nature of the surroundings at this place.   The plaintiff's driver and the railroad company were each on the premises of the machine company by invitation of said company, either express or implied; neither had the right to use the premises to the exclusion of the other, but each party in using the premises was bound  to  exercise  due  care.   The  general  principle applicable is thus stated in Shearman & Redfield on Negligence, 6th·Ed. § 10 a:   "There are few relations or situations in life in which the law does not impose the duty on everyone not to injure another by his acts or omissions, wanting in due, reasonable or ordinary care when harm is observable and preventable."   In the case at bar the evidence was conflicting.   For the defendant there was evidence to show that plaintiff's driver was negligent;  that he was warned of the danger by the flagman before he went to the delivery door, and that the driver took a chance of unloading and getting away before the train came down.   This is denied by Pettit. If the testimony of the plaintiff's witnesses is true that the train was running 20 miles an hour around the curve and that no sufficient warning was given by whistle or otherwise

and that the engineer was giving no attention to the track ahead, the jury would be warranted in finding defendant guilty of negligence, as, to use the language quoted above, the harm was observable and preventable.    The engineer in regulating the management of his train had a right to proceed on the assumption that the flagman was at his post and would discharge his duty.    The fact that there was a flagman at the crossing, however, did not relieve the engineer from the duty of using due care in approaching the crossing. It was his duty to give timely warning of the approach of the train and to pay some attention to the track ahead.    To drive his locomotive ahead at a rapid rate of speed on a dangerous curve of this kind without giving warning of his approach and without looking in the direction in which his train was moving was clearly negligent management of the train for which the defendant railroad company would be liable.

The action of the trial court in directing a verdict was erroneous and the exception of the plaintiff thereto is sustained.

The case is remitted to the Superior Court with direction to grant the plaintiff a new trial in the case against the railroad company.

*Easton, Williams & Rosenfeld.  Charles R. Easton,* for plaintiff.

*James L. Jenks,* for Howard & Bullough American Machine Company.

*Eugene J. Phillips,* for N. Y., N. H. & H. R. R. Co.