## Veres et al., Appellants, *v.* Pennsylvania Railroad Co. et al.

Argued April 17, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Clair D. Moss*, for appellants.

*John R. Bredin*, with him *Dalzell, McFall, Pringle & Bredin*, for appellees.

OPINION BY DITHRICH, J., July 17, 1947:

Plaintiffs in their statement of claim charged both defendants with negligence in the maintenance of a public crossing in the Borough of Cheswick, and the defendant railroad company with negligence in the operation of a train over the crossing. When the case came on for trial, it was discontinued as to the Borough of Cheswick and proceeded with against the other defendant. It resulted in a verdict for plaintiffs, and from the entry of judgment n. o. v. they have appealed.

Considering the evidence in a light most favorable to plaintiffs, as it must be considered in view of the verdict, it appears that on December 31, 1944, at about 8:20 p. m., Nick Veres was operating an automobile, owned jointly by himself and his father, in a northerly direction over the Pennsylvania Railroad crossing at River Sand Road, also known as Blockdale Street, in the outskirts of Cheswick Borough. The road leads to only three houses situated east of the crossing on the southerly side of the railroad and a sand and gravel yard between the railroad and the Allegheny River. Approxi-

mately one hour earlier in the evening Veres had driven over the crossing in a southerly direction to make a visit at one of the three houses heretofore mentioned. In driving back over the crossing he had reached the second or westbound track when his automobile skidded off the crossing and into a position between the rails where it was impossible to move it on its own power back onto the crossing. Its front bumper came to rest against a four-foot embankment of snow piled along the northerly side of the track, with its headlights visible in that direction only.

While attempting to maneuver the car, Veres saw the headlight of an approaching train estimated by him to be about 1250 feet east of the crossing. To save himself he got out of the automobile but made no effort to flag the train or give any warning of the presence of the automobile on the track. The engineer did not see the automobile until he was ". . . very close to the crossing . . . A car length or two . . ." when he ". . . saw one light on the car." The train came to a stop about 1200 feet beyond the crossing. The engineer made an emergency stop and he and two members of the train crew testified that by actual count it was eight car lengths or 400 feet beyond the crossing.

Plaintiffs did not allege that the train was being operated at an excessive rate of speed, nor did they estimate the speed at which it was being operated as it approached the crossing, but the jury was permitted to base an inference as to speed on the distance the train traveled after the collision. That was the only evidence of negligence in the operation of the train, and in our opinion it was not sufficient to take the case to the jury.

Plaintiffs concede in their brief ". . . that the condition of the crossing was not the proximate cause of the accident" and state that they offered it as ". . . the only logical reason for the car to leave the crossing and become lodged between the tracks." Since we are not presently concerned with the question of plaintiffs' con-

tributory negligence, we need not go into that phase of the case. Their testimony was that the presence of ice and snow on the crossing caused the car ·to skid. The presence of ice and snow was general in the vicinity.

As to the speed of the train, the only direct and positive testimony on that point is that it was from 25 to 30 miles an hour, as estimated by the members of the crew. But even if a higher rate could reasonably be inferred from the distance the train traveled (according to plaintiffs' testimony) beyond the crossing, it still would not support an inference of negligence unless it could be proven that it was an unusual speed for trains at that crossing or that some condition was present and actually or constructively known to the enginemen which would make such speed negligence. *Haller v. Pennsylvania R. R.*, 306 Pa. 98, 159 A. 10.

Accepting at its face value the testimony of the operator of the automobile that he could see the headlight of the locomotive when it was 1250 feet away, there is no evidence that the engineer or fireman could or should have seen the automobile at that distance or at any distance short of that to which the engineer testified. There is a curve in the track about 500 or 600 feet east of the crossing and under the most favorable weather conditions the enginemen would not have a clear view of the crossing until after the locomotive had rounded the curve. At the time of the accident it was foggy and a slight drizzle was falling. The rails were wet and slippery. Both sides are in agreement as to that.

Appellants make much of the fact that the engineer did not see the automobile until he was within one or two car lengths of the crossing. But assuming that he saw it, or should in the exercise of due care have seen it, as soon as he entered the straightaway some 500 or 600 feet east of the crossing (and it should be kept in mind that the automobile was wedged against the snowbank with only one light visible), there is no evidence that he could have brought his train to a stop in time to avoid the

collision. The evidence clearly establishes that the train comprised of thirty loaded freight cars could not possibly have been stopped in less than eight or ten car lengths—400 to 500 feet—when traveling at a rate of speed of 25 to 30 miles an hour.

Under quite similar circumstances, although more favorable to plaintiff because the accident happened about noon on a clear day, this court in *Tallman v. Reading Company*, 117 Pa. Superior Ct. 148, 177 A. 228, affirmed the entry of judgment n. o. v. for defendant. In that case plaintiff's decedent had driven a truck upon a crossing where it was struck by one of defendant's trains. The court speaking through CUNNINGHAM, J., said (p. 155) : "The engineman's testimony was that he applied the emergency brake the instant he saw the truck 'come up on the crossing and stop,' and that the distance from the point at which the emergency brake was put on to the crossing was between 75 and 100 yards—at the most 300 feet. When we are dealing with the testimony of a witness who is facing an approaching train, more than 1,200 feet away and coming at a rate of 40 to 45 miles an hour, and he says it was in the vicinity of a bridge 550 feet beyond the crossing upon which the truck had then stopped, and are comparing his statement with that of another witness who says the distance in question was approximately 300 feet, we cannot say there is a material conflict in their testimony. The evidence for plaintiff does not contain any positive, definite statement fixing the location of the train when her husband drove upon the track. But if we give her the full benefit of McKinney's testimony, it was somewhere between 500 and 600 feet away. She proved by her expert witness that the distance required under the existing circumstances for stopping the train would be 'between 450 and 500 feet.' If McKinney's testimony be accepted at its full face value, we think the margin would be too narrow to support a finding that the engineman was negligent in failing to stop the train in time to avoid the collision;

there is no other evidence in the case supporting a finding of negligence upon the part of defendant." See also *Wagner v. Lehigh Traction Company,* 212 Pa. 132, 61 A. 814, where, although the occupants of a wagon stalled on the street railway tracks could see the headlight of the street car 880 feet from the place of the accident, the motorman was held to be not negligent notwithstanding he did not see the wagon until he was within twelve feet of it; and *McCann v. Pennsylvania Railroad Company,* 119 Pa. Superior Ct. 205, 180 A. 750.

Defendant's point for binding instructions should have been affirmed by the learned trial judge, and the court en banc was fully justified in subsequently entering judgment for the defendant notwithstanding the verdict.

Judgment affirmed.