Stoner *v.* Penn-Brixite, Inc., Appellant.

Argued November 15, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*J. Campbell Brandon,* with him *Hugh S. Millar* and *Brandon, Millar, Rockenstein & MacFarlane,* for appellant.

*John N. Gazetos,* with him *Armand R. Cingolani,* for appellee.

OPINION BY ERVIN, J., January 14, 1955:

This is an action in trespass for personal injuries and property damages resulting from a collision between an automobile and a truck. Defendant filed a cross-suit for property damage to its vehicle and cargo. The cases were tried together and a verdict was rendered in favor of the plaintiff. Defendant filed motions for new trial and for judgment n.o.v. The lower court refused these motions and this appeal followed.

It is our duty to review the testimony in the light most favorable to plaintiff appellee, resolving all conflicts therein in his favor, and giving him the benefit of every fact and inference of fact reasonably to be deduced from the evidence; *McMillan v. Mor Heat Oil and Equipment Co., Inc.,* 174 Pa. Superior Ct. 308, 101 A. 2d 413; *Coradi v. Sterling Oil Company,* 378 Pa. 68, 105 A. 2d 98.

On August 14, 1951, at approximately 10:45 o'clock p.m. a collision occurred on State Highway Route No. 8 a short distance south of the City of Butler involving an automobile driven by Wayne C. Stoner, the plaintiff, and a truck owned by Penn-Brixite, Inc., the defendant, and driven by its employe, Herman Frazier. The accident occurred on the improved part of a three-lane highway which was thirty-three feet wide. The plaintiff was proceeding toward the City of Butler in the right-hand lane of the three lane highway headed north. The night was clear, the roadway was dry. There was a line of traffic comprising five or six cars traveling in a southerly direction approaching plaintiff in the lane on the other side of the middle lane. The leading vehicle in this line was a car driven by a Mrs. Smolen which was followed by the defendant's truck and the other cars. The car driven by Mrs. Smolen slowed down and she signalled her intention to make a left-hand turn across the highway. At that time the defendant's truck moved into the center lane of traffic and attempted to pass the car driven by Mrs. Smolen and it was while passing the Smolen car that a collision occurred between plaintiff's car and the defendant's truck. There is some dispute as to the exact location of the place where the accident occurred, whether it was in a right-hand curve of the highway or in a straight stretch immediately south of the curve. Plaintiff testified he was entirely

in his right lane of the highway at the time the collision occurred. The defendant's driver and another witness testified that the collision took place in the center lane of traffic. The photographs introduced in evidence disclosed that the plaintiff's car was struck on the left front. After the accident the plaintiff's car was in the center lane of traffic, and the defendant's truck on its side partly in the southbound lane of traffic. There is no evidence that either vehicle was exceeding the speed limit.

The pivotal conflict in the evidence in this case concerns the exact place of contact and collision of the automobile and truck. Appellant contends the collision occurred in the center lane of the highway and appellee claims his car was struck while he was in the right-hand lane. The testimony clearly discloses that immediately prior to the accident the appellee was traveling in his own lane, his lights were properly dimmed, he was traveling between forty and forty-five miles per hour and his car was being operated in a normal and proper manner. It is also clear that just prior to the accident the appellant's driver had driven the truck into the center lane and was in the act of passing the car ahead of him, the driver of the car having signalled her intention to make a left-hand turn across the highway. Appellant asserts the collision occurred as a result of appellee's inability to make the curve causing appellee to cross into the center lane. Appellant's driver testified: "A. Well, I kept coming, because the car itself was coming all right, but as I got even with Mrs. Smolen he was coming into the little turn there, he couldn't make the turn there, he kept coming straight, . . ." The driver of one of the cars which had been traveling behind the truck also testified the actual collision occurred in the curve and that appellee's car was about a foot or two into the center

lane as he saw him approaching. Appellee testified: "A. I believe the truck making a pass of Mrs. Smolen's car, suddenly cut into me, hitting her, cut out around her and got me about twelve or fourteen inches on my bumper, on his side of my car; the truck's side of my car; twelve or fourteen inches in on my bumper. Q. And what vehicle struck you? A. The truck. Q. At the time you were in what lane of traffic with your own car? A. I would say I was in my right lane of traffic." Under the circumstances here the determination of the location of the accident is for the jury. Where conflicting stories are told by the witnesses as to the manner in which a motor vehicle collision occurred, the question of fact is one for the jury. *Pastore v. Suglia,* 174 Pa. Superior Ct. 339, 101 A. 2d 135. The jury found a verdict for the plaintiff. The evidence obviously does not lead to the inevitable conclusion that defendant was not negligent as a matter of law and therefore judgment n.o.v. was properly refused.

Appellant also requests a new trial because of the alleged error in the charge of the trial judge who instructed the jury to disregard evidence of appellee's drinking intoxicants. The trial judge stated in his charge: ". . . we have some evidence here that Mr. Stoner did have some beer here at Nick's Cafe, I think it is, before this accident. He said he stopped there. Members of the Jury, I only allowed that evidence to come in, with this promise, that if I allowed it to come in it would be followed by evidence to show this man Stoner was under the influence of intoxicating liquor at the time the accident happened. *There just isn't any evidence in here that he was and under those circumstances the evidence he was drinking is immaterial.* To show the use of intoxicating liquor must be followed by proof that it put him under the influence. . . . So disregard that evidence." (Emphasis

added) The instruction to the jury was correct. There was no evidence produced to show that appellee was under the influence of intoxicating beverages prior to or at the time of the accident. True, appellee stated he had stopped in Nick's Inn for about a half hour before he began to drive back to Butler and drank two or three glasses of beer. Also, there was testimony that there were several broken beer bottles at the scene of the accident and the odor of beer was detected on appellee's breath. However, there is no evidence to show that the appellee was operating his automobile under the influence of any intoxicants. The driver of appellant's truck, who admitted he could see almost one thousand feet down the road when he rounded a curve in the highway, testified that he could see appellee's car approaching in the right lane with lights properly dimmed, and that the operation of the car was normal and proper in every respect. Moreover, there is no evidence whatsoever of anything unusual or abnormal in appellee's conduct or appearance that would suggest he was operating his automobile while under the influence of intoxicating beverages. Appropriate here is the statement of Justice, later Chief Justice, KEPHART in *Critzer v. Donovan*, 289 Pa. 381, 137 A. 665: "Since there was no evidence that Kane, the driver, was intoxicated, was the testimony otherwise competent? In view of the issues here raised we think it was not competent for any purpose. Proof of the odor of liquor is admissible for certain purposes, but its natural consequence is not reckless driving. Certainly if the driver was not intoxicated or driving while under the influence of liquor, the fact that he may have taken a drink has no bearing on the question of his negligence. Such testimony directly tends to raise in the minds of the jurors another issue,— whether he was intoxicated,—which, in the absence of

other evidence, should not have entered into the determination of the case. Moreover, this question was of such nature as to create an unfair prejudice against the driver and the owner."

Judgment affirmed.