## Commonwealth *v.* Godfrey, Appellant.

Argued November 8, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Henry C. Kessler, Jr.,* with him *Robert J. Brown,* for appellant.

*George W. Atkins,* District Attorney, with him *Nevin Stetler,* First Assistant District Attorney, for appellee.

. OPINION BY ROSS, J., March 24, 1955:

This is an appeal from the refusal of a new trial after a conviction of involuntary manslaughter arising from an automobile collision.

On November 22, 1952 at about 1:30 a.m., an automobile driven by the defendant eastwardly on U. S. Route No. 30 near York collided with an automobile driven by Howard Miller in the opposite direction. In the Miller automobile at the time were Elena Reever, who lost her life as a result of the collision, Marguerite Stouch and Lloyd Stermer. The highway at the point of collision is three-lane and the collision occurred on Miller's lane of traffic. After the jury returned a verdict of guilty and the defendant's motion for a new trial was refused, he took this appeal.

. The defendant does not question the sufficiency of the evidence to sustain the conviction but contends that the court below committed certain trial errors.

At the start of the trial defendant's counsel moved for the sequestration of the Commonwealth's witnesses, Howard C. Miller, Marguerite Stouch and Lloyd Stermer. This motion was overruled and the appellant contends that this ruling was in error.

Admittedly, sequestration of witnesses is discretionary with the trial court (*Com. v. Sloat,* 298 Pa. 10, 147 A. 834), but appellant, relying upon *Com. v. Turner,* 371 Pa. 417, 88 A. 2d 915, contends that the trial court here abused its discretion in not sequestering the witnesses because the Commonwealth's "entire case rests upon the credibility" of the *named* witnesses. If that were true, the rule in Pennsylvania would no longer be that sequestration of witnesses is within the discretion of the trial judge, for very few cases do not turn in some degree upon the credibility of witnesses.

In the *Turner* case the Supreme Court had before it an appeal arising from the third trial of the defendant

on a charge of murder. There were no eyewitnesses to the crime. The Commonwealth's case depended upon the testimony of an alleged accomplice who had confessed to the crime and of two detectives who repeated an inculpatory statement made by Turner while in custody. With respect to the testimony of the detectives the Supreme Court observed at page 429: "Nothing could have been more telling against the defendant than the alleged statement by him that he had to hit one of the men who were killed a second time and so hard that the blood came out of his ears. That he made such a statement depended entirely upon the testimony of the two detectives. No legal test of their credibility should have been denied." There was some reason to doubt the veracity of the detectives in that neither mentioned the statement to their superiors in charge of the investigation of the crime. Further, while the alleged accomplice was, according to the detectives, in the cell with Turner and the third alleged murderer at the time Turner made the statement, the accomplice, who did not hear the detectives testify, denied that he was ever in a cell with anyone during the period of his custody.

There is no similarity between the facts in that case and those in the one before us. Furthermore, although the Supreme Court held in the *Turner* case that the trial court abused its discretionary power to sequester, it stated at page 430: "In holding, as we do, that a proper exercise of discretion by the trial judge required the sequestration specifically requested in this case and that the refusal of the request was reversible error, our ruling is not to be construed as making a generic change in the established practice in this Commonwealth of permitting the presence in the court room of prospective witnesses."

The learned court below did not err in refusing the defendant's motion for sequestration.

The defendant's second contention is that the court erred in refusing to permit cross-examination of Commonwealth's witness Marguerite Stouch "as to whether or not she had consumed alcoholic drinks" earlier in the evening—this for the purpose of attacking her credibility. The trial court sustained an objection to this question and did not permit defendant to inquire further relative to the witness' use of intoxicating beverages prior to the accident unless the defendant intended "to produce witnesses that she [Stouch] was intoxicated", and defendant's counsel stated, "We are not in any position to do that."

Intoxication on the part of a witness at the time of an occurrence about which the witness has testified is a proper matter for the consideration of a jury as affecting his credibility (*Com. v. Rouchie*, 135 Pa. Superior Ct. 594, 604, 7 A. 2d 102), but, as stated by the learned court below, "Whether one may have partaken of some liquor is not a test of one's credibility and is the type of question, whether answered in the affirmative or negative, that may create in the minds of some jurors a most unfavorable inference."

The trial court committed no error in sustaining the Commonwealth's objection to this line of questioning. Cf. *Stoner v. Penn-Brixite, Inc.*, 177 Pa. Superior Ct. 189, 110 A. 2d 904, and *Critzer v. Donovan*, 289 Pa. 381, 137 A. 665, cited therein.

The defendant was injured in the accident and was taken to the York Hospital, where he remained for several hours. Upon his discharge from the hospital he was taken into custody by the State Police, who secured a statement from him relative to the accident. The statement was self-incriminatory and was read to the jury over objection by the defendant. His

objection was that at the time the statement was made his physical and mental condition as the result of the injuries sustained was "such as to make any statement taken under those conditions involuntary". The defendant was given and accepted the opportunity to cross-examine the State Policeman relative to the defendant's condition at the time the statement was made, and after the cross-examination the statement was read to the jury. Relative to the statement the trial court charged the jury as follows: "But before you consider that statement at all as a jury, you must in your own mind determine whether or not it was voluntarily obtained. If it was you may consider it. If it was not then don't even read it, don't consider it at all. That is one of the duties which devolves upon you as a jury. And, of course, if for any reason, even though you do decide it was obtained voluntarily so far as force or coercion or promises were concerned, if you find that the statement in your opinion was not true, or that it was given when the man was mentally irresponsible, and therefore is not true and correct, then of course you should not consider it either because it would not be proper."

There was a direct contradiction in the testimony given by witnesses for the Commonwealth and for the defense relative to the defendant's condition at the time the statement was made, the Commonwealth's testimony being to the effect that the defendant at the time he gave it was in fit condition mentally and physically, while he and his witnesses testified otherwise. This contradiction raised an issue of fact which was for the jury. (*Com. v. Lockard,* 325 Pa. 56, 62, 188 A. 755), and the jury resolved the issue in favor of the Commonwealth. Consequently, there is no merit in appellant's contention that the court erred in allowing the statement in evidence.

Defendant's final contention also relates to his condition when he made the statement. His father, Irvin H. Godfrey, who was present at the hospital when the defendant was discharged, in reply to the question "When the nurse brought Jim out to the room where you and your wife were waiting, did you or did you not have any conversation with that nurse about your boy?" answered, "Yes, I did." He was then asked, "What instruction, if any, did the nurse give you regarding your boy?" The Commonwealth's objection to this question on the ground that it was hearsay was sustained by the trial court, and the defendant contends that this ruling was error. However, we do not agree.

In support of his contention that the court committed error in sustaining objection to the question, the defendant relies upon a statement from *Henry on Pennsylvania Evidence,* vol. 1, sec. 441, pages 434-435: "The hearsay rule has no application where the question is whether certain things were said or written by a third person and not whether they were true."

This limitation on the hearsay rule is well established (*Wagner v. Wagner,* 158 Pa. Superior Ct. 93, 97, 43 A. 2d 912), but it has no application here. By his own admission the defendant, by seeking to place in the record the instructions of the nurse with respect to his care after leaving the hospital, wanted to show "what the condition of the defendant was at this time and whether or not he was in proper condition to be questioned by the State Police, as well as demonstrating whether or not any statement made by the defendant at that time could have been voluntary". Consequently, since the instruction of the nurse was offered as evidence of the truth of the matter asserted, it was properly excluded as hearsay.

The judgment of sentence is affirmed; and it is ordered that appellant appear in the court below at such time as he may be there called and that he be committed by that court until he has complied with his sentence or any part thereof which had not been served at the time his appeal was made a supersedeas.