## Marino *v.* Pennsylvania Railroad Company, Appellant.

Argued November 16, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Thomas D. Thomson,* with him *Dalzell, Pringle, Bredin & Martin,* for appellant.

*Herbert B. Lebovitz,* for appellee.

OPINION BY ROSS, J., January 17, 1956:

This is a trespass action involving a grade crossing collision between plaintiff's automobile and defendant's freight train. After a jury verdict for the plaintiff for damages to his automobile, the defendant's motion for judgment n.o.v. was refused and it took this appeal. The only question involved is whether the negligence of the defendant was shown.

At 9 o'clock on the night of November 11, 1950, a clear moonlight night, the plaintiff and his wife started across the Morgan Street railroad crossing in Brackenridge, Pennsylvania. The road was clear and visibility very good. Through no fault of plaintiff's his car stalled on the tracks of the defendant, and for several minutes, he attempted, unsuccessfully, to start the motor. The crossing signal lights began blinking, indicating the approach of a train, so plaintiff's wife left the car and proceeded up the track, wearing white gloves and a white headdress, and began flagging down the train. Plaintiff left the vehicle soon after and followed her up the track for a distance of about forty feet and he began signalling also. He saw the train when it was about 2000 feet away from the crossing and at that time it was proceeding at about 35 to 40 miles an hour. When the distance narrowed to 1500 feet, the train slowed to about 20 miles an hour speed

and when it was about 40 feet from the crossing the plaintiff heard a "grinding noise" of the wheels. The train proceeded, however, struck and damaged plaintiff's car, and came to a final halt 400 feet beyond the crossing. The engine's headlight was lit as were the lights on plaintiff's car and the track for approximately 900 feet is practically straight as it approaches the crossing.

The plaintiff was obliged to provide the jury with sufficient evidence to conclude that the defendant's engineer saw, or by due diligence should have seen, his vehicle stalled upon the track while the train was of sufficient distance away from the crossing that it could have been stopped before reaching the point of collision. *Tallman v. Reading R. Co.,* 117 Pa. Superior Ct. 148, 177 A. 228. Examined against this standard, the evidence, viewed in a light most favorable to plaintiff, giving him the benefit of every reasonable inference (*Stoner v. Penn-Brixite, Inc.,* 177 Pa. Superior Ct. 189, 110 A. 2d 904), indicates ample factual basis for the jury's conclusion of negligence on the part of the defendant. The crossing is located in a populated area, and is approached by the train from around a curve which straightens out about 900 feet distant. It is visible to the engineer for at least this distance and probably slightly more as the engine rounds the bend. Whether it was because he saw the stalled car or from his ordinary caution as he approached the crossing, the engineer slackened from a speed of 40 miles an hour to 20 miles an hour when still 1500 feet away. He proceeded at this rate of speed until within 40 feet of the crossing when the plaintiff heard the "grinding noise" of the wheels. The jury could well infer that this was the application of the full brakes too late, of course to prevent the collision, but sufficient to stop within 440 feet, and that the train could have been stopped

before reaching the crossing by application of the brakes 1500 feet away or at latest, 900 feet away when the engine entered the straight approach to the crossing which was in clear view of the engine's headlamp.

The very physical nature of this crossing with its straightaway approach, coupled with the weather condition and the clear visibility sufficiently indicates that the engineer could and should have seen the car while at least 900 feet away. Under these circumstances, if he did not see it, he simply was not looking. It is precisely this situation which distinguishes this case from *Grotefend v. Pennsylvania R. R. Co.*, 380 Pa. 439, 441, 110 A. 2d 362; *Veres v. Pennsylvania R. R. Co.*, 161 Pa. Superior Ct. 177, 181, 54 A. 2d 77; *Tallman v. Reading Company*, 117 Pa. Superior Ct. 148, 154, 177 A. 228; and *Guyler v. Lehigh Valley R. R. Co.*, 165 Pa. Superior Ct. 196, 198, 67 A. 2d 575, cited by appellant, in each of which cases the plaintiff failed to show any circumstances indicating that the engineer saw or could and should have seen the stalled vehicle while still at sufficient distance to stop. In the *Grotefend* case, the plaintiff's witnesses testified that there was a curve in the track and that the view was obstructed by other cars; the *Veres* case involved a clear track of only 500 feet on a foggy, drizzling night and the plaintiff's vehicle was wedged against a snowbank with but one headlight visible. In the *Tallman* case, there was a clear view from the engine of from only 300 to 550 feet while plaintiff's own expert testified that the train would require at least 450 to 500 feet in which to stop, and we held such margin too narrow to infer negligence on the part of the engineer; and in the *Guyler* case, the crossing was located in open country, the speed of the train was reasonable under the circumstances, it was a dark and misty night, and the plaintiff's stalled vehicle was not in a position to

be easily seen. In contrast, the engineer here had the opportunity of a clear view.

Immediately after the collision, two trainmen alighted from the engine and came to the scene of the collision. The plaintiff testified, referring to the engineer, "He said that he had saw the car, he says, 'but you know today a lot of pranksters they pull out on the first track and when a train is getting ready to stop, they either pull back or pull out.'" The defendant objected to this testimony but it is on the record, and therefore is for our consideration in determining this appeal. *Donegal Twp. School District v. Crosby*, 171 Pa. Superior Ct. 372, 376, 90 A. 2d 341. The engineer's statement certainly is the basis for an inference by the jury that he saw the automobile stopped on the crossing, saw it in time to stop his train before it reached the crossing but did not do so because he thought it was some prankster. He took a "guess" and as a result the plaintiff's automobile was damaged. Furthermore, the jury could well have inferred that since the train slowed from 40 miles per hour to 20 miles per hour within the distance of the first 500 feet, as testified to by plaintiff, it could have been stopped, if not within the next 500 feet, well within the next 1500 feet to the crossing. It was the duty of this engineer, with the clear view for a least 900 feet, if not to stop immediately, to proceed with sufficient caution that he could have stopped short of the crossing when the emergency became unquestionable. True, the evidence is all circumstantial, but quite sufficient under the circumstances. See *Naugle v. Reading Co.*, 145 Pa. Superior Ct. 341, 345, 21 A. 2d 109, which is quite similar on its facts and in which the engineer stated: "We can't stop for every little flagging on our road, or we would be stopping all the time"; *Doran v. Pittsburgh R. R. Co.*, 343 Pa. 204, 206, 22 A. 2d 826, 827,

where the engineer had a clear view of 794 feet and the Supreme Court held that he had ample time to see the predicament of plaintiff "had he been keenly watchful, as he was bound to be in approaching the public crossing"; *Broad v. Pennsylvania R. R. Co.*, 357 Pa. 478, 55 A. 2d 359, in which the engineer had a clear view of 800 feet yet threw the emergency brake while only 150 feet from the crossing and was thus held negligent.

The burden upon the plaintiff here was not to prove with mathematical precision the exact stopping distance of this train. He had only to produce sufficient competent evidence of the happening of the accident, as he did, from which the jury could reasonably infer that the train could and should have been stopped. Under the circumstances here—clear view with unobstructed vision for 900 feet, slowing down of the train to 20 miles an hour while still 1500 feet away but full application of the brakes only 40 feet from the crossing, the stopping of the train within 440 feet thereafter, the obviously risking of the safety of plaintiff's property on the mistaken notion that this was another prankster—the case was clearly for the jury and the motion for judgment n.o.v. was properly refused.

Judgment affirmed.