**Commonwealth v. Smith**

*E. David Christine Jr., district attorney,* for Commonwealth.

*George Royle IV,* for defendant.

VICAN, *J.,* June 18, 2010—On September 3, 2009, Wesley Smith (defendant) was arrested and charged with multiple counts of aggravated assault, simple assault, terroristic threats with intent to terrorize another, disorderly conduct creating a hazardous or physically offensive condition, recklessly endangering another person and public drunkenness and similar misconduct. The charges are the result of a 911 call regarding a possible domestic dispute at HC 1, Box 1600, Kuhenbeaker Road (across from Golf Cart Business), in Blakeslee, Monroe County, Pennsylvania. The Pocono Mountain Regional Police Department (PMRPD) dispatched two officers to the scene to investigate and they were confronted by defendant who pointed a gun in their direction. Defendant was arrested on September 3, 2009 and released on bail on September 4, 2009. A preliminary hearing was held on October 8, 2009, before Magisterial District Judge Richard Claypool and the charges were bound over to court.[1]

---

1. The Commonwealth and defendant's attorney agree that all charges were bound over to court by the magisterial district judge, including the charge of public drunkenness. However, the charges of

On November 9, 2009, a criminal information was filed formally charging defendant with two counts of aggravated assault, 18 Pa.C.S. §2702(A)(6), (F2); two counts of simple assault, 18 Pa.C.S. §2701(A)(3), (M2); two counts of terroristic threats with intent to terrorize another, 18 Pa.C.S. §2706 (A)(1), (M1); and two counts of disorderly conduct creating a hazardous or physically offensive condition, 18 Pa.C.S. §5503(A)(4), (M3). The charges of public drunkenness and similar misconduct and recklessly endangering another person were not included in the criminal information. (See Monroe County docket entries, p. 4.) Defendant filed an omnibus pretrial motion on December 8, 2009, which included a request for bill of particulars, pretrial discovery, and a motion in limine to preclude "the Commonwealth witnesses from claiming or stating or suggesting that the defendant was drunk, inebriated, under the influence of alcohol—or any similar testimony." (Omnibus, 12/8/09, p. 3.) On December 29, 2009, the Commonwealth filed a response to defendant's request for bill of particulars.

A hearing with respect to defendant's requests for bill of particulars, pretrial discovery, and the motion in limine was held on January 12, 2010, at which time de-

---

public drunkenness and similar misconduct, disorderly conduct creating a hazardous or physically offensive condition, and recklessly endangering another person do not appear on the official transcript (OTN K 990838-2) filed by Magisterial District Judge Richard Claypool. (See OTN K 990838-2, dated 10/8/09.) Nevertheless, the Monroe County Common Pleas docket entries indicate that all charges, including public drunkenness and similar misconduct, disorderly conduct and recklessly endangering another person were, in fact "held for court" on October 8, 2009. (See docket entries, *Com. v. Smith*, no. 1769 Criminal 2009, p. 4.)

fendant's request for bill of particulars and pretrial discovery requests were resolved. Accordingly, the only matter remaining to be decided by this court is defendant's motion in limine. At the conclusion of the hearing, the parties were directed to file briefs in support of their respective positions on the motion in limine within seven days. On January 15, 2010, the Commonwealth filed a motion for leave to amend information. As a result, our decision on defendant's omnibus pretrial motion was held in abeyance until after the February 5, 2010 hearing on the Commonwealth's motion to amend.

The relevant facts of this case are that on September 3, 2010, Officers Jeff Papi and Derek Chaffee of the Pocono Mountain Regional Police Department (PMRPD) were dispatched to a domestic dispute on Kuhenbeaker Road in Blakeslee, Monroe County, Pennsylvania. The officers arrived at 10:24 p.m. and attempted to locate the residence. Two other residences were checked prior to finding the one in question, which was identified as HC 1, Box 1600, Kuhenbeaker Road, Blakeslee. Officers Papi and Chaffee approached the residence on foot along side of Kuhenbeaker Road, walked across the front yard to the driveway. There was an outside porch light on at the front of the residence. As Officer Papi attempted to walk onto the deck to make contact with someone, he heard a male voice yell out "Who the fuck is on my property?" When Officer Papi turned to look in the direction of the driveway behind him, he observed a white male standing behind a pickup truck pointing a gun at him. The man was later identified as Wesley Smith. Mr. Smith continued yelling "Who the fuck is on my property?" As Officer Papi took immediate cover at the

corner of the residence, he yelled back at Mr. Smith saying that he was a police officer. Both officers yelled "police" several times. Officer Papi, with his firearm drawn, then re-engaged Mr. Smith from his point of cover and observed that Mr. Smith was still pointing a handgun in his direction. The officers repeatedly told Mr. Smith that they were police officers and ordered him to "put the gun down". Mr. Smith did not comply. Instead, he bent down towards the ground and disappeared. When Mr. Smith stood back up, he put his hands in the air. Officer Papi ordered Mr. Smith not to move, but he began to walk away from the residence behind the pickup truck. Officer Papi repeatedly told him "Don't move!" At this time, Mr. Smith walked out into the open with his hands up but continued to say "What the fuck are you doing on my property?" The investigation later revealed that Mr. Smith had been advised by Deanna Terlesky that she had called the police. As Officer Papi approached Mr. Smith, he smelled a strong odor of alcoholic beverage emanating from Mr. Smith's body. Even after being taken into custody, Mr. Smith continued to yell profanities. The officers found a 9 mm handgun on the ground with ten rounds of 9 mm ammunition in the magazine. (Affidavit of probable cause, 9/4/09.)

At the February 5, 2010 hearing, Officer Derek Chaffee testified that he and Officer Papi were both in full patrol uniform when they approached Mr. Smith's residence. (Notes of testimony, 2/5/10, p. 28.) Officer Chaffee also testified that when he heard someone (Mr. Smith) yell "[W]ho the fuck is on my property?" he "turned to look from the direction. The voice came from—which is the front yard which we just came from where saw an individual standing pointing a gun at Of-

ficer Papi's direction." (N.T., 2/5/10/, pp. 30, 46.) Officer Chaffee stated that he immediately began to draw his firearm and yelled "police, police. Drop the gun." (N.T., 2/5/10, p. 30.) When Mr. Smith heard his voice, he turned toward Officer Chaffee pointing the gun in his direction. Officer Chaffee took cover behind a vehicle that was parked in the driveway. (N.T., 2/5/10/, p. 30.) Officer Chaffee further testified that after Mr. Smith was taken into custody and as he was holding onto him, he physically had to hold Mr. Smith because he was stumbling and he would lose his balance. (N.T., 2/5/10, p. 32.) Officer Chaffee also noticed that Mr. Smith's speech was "very slurred"; his "words were jumbled together"; "he had glassy eyes"; and his breath smelled "of alcoholic beverages as well." (N.T., 2/5/10, p. 32.) Mr. Smith also had to be assisted to the police vehicle. On direct examination, Officer Chaffee testified:

"Q: Could you describe what you had to do to assist him?

"A: I had to hold onto him the entire time. I had an arm underneath his arm holding him up a little bit. He was—he would stumble and kind of trip. . . .

"Q. And you mentioned earlier that he was stumbling and you had to hold onto him. Could you describe specifically how he was stumbling?

"A. He would, as we were standing in one place, he would sway back and forth a little bit. He would try and take a step and lose his balance. He had lack of physical control." (N.T., 2/5/10, p. 34.)

Following the February 5, 2010 hearing, the parties were given an extension of time within which to submit

briefs with respect to the Commonwealth's motion to amend the criminal information. The Commonwealth filed a brief on motion to amend the information and defense's habeas petition on March 31, 2010; however, defendant has not filed any supporting brief. We are now ready to dispose of this matter.

## DISCUSSION

We will first address the Commonwealth's motion to amend since the decision on that motion will guide our decision relative to defendant's motion in limine.

### Commonwealth's Motion To Amend Information

In its motion to amend, the Commonwealth seeks permission to amend the criminal information to include a charge of public drunkenness, 18 Pa.C.S. §5505. However, the concession made by the Commonwealth in its brief on motion to amend the information renders this motion moot. Specifically, the Commonwealth concedes that it is unable to establish that defendant appeared in a "public place" as required by the statute for purposes of proving a charge of public drunkenness. (Brief, 3/31/10, p. 1.) Accordingly, the Commonwealth's motion to amend information is moot.

Next, we will address defendant's omnibus pretrial motions.

### Request for Bill of Particulars

On December 8, 2009, defendant filed an omnibus pretrial motion which included a request for a bill of particulars seeking: (1) "the names and addresses of the

persons whose home the police officers visited immediately before coming to defendant's home on the night of the incident alleged in the information;" (2) "at whom the defendant is alleged to have pointed a gun" and "the name(s) of the officer who will testify that the gun was pointed at both officers;" and (3) "what threat was communicated with the intent to terrorize the officers." (Omnibus, 12/8/09, ¶¶4-6, pp. 2-3.)

Initially, the Commonwealth argues that defendant's request for bill of particulars is untimely. (Bill of particulars, 12/29/08, n.1, p. 1.) We agree.

Pa.R.C.P. 572(a) of provides as follows:

"(a) A request for a bill of particulars *shall be served in writing by the defendant upon the attorney for the Commonwealth within seven days following arraignment.* The request shall promptly be filed as provided in Rule 9022 subsequent to service upon the attorney for the Commonwealth.

"(b) The request shall set forth the specific particulars sought by the defendant, and the reasons why the particulars are requested . . . .

"(d) When a motion for relief is made, the court may make such order as it deems necessary in the interests of justice." Pa.R.C.P. 572. (emphasis added)

In the instant matter, defendant was arraigned on November 9, 2009. Defendant had seven days from the date of arraignment to request a bill of particulars; however, defendant did not file his request until December 8, 2009 (22 days after the expiration of the seven-day period). Clearly, the request for a bill of particulars was untime-

ly. Even so, as a courtesy to the defense, the Commonwealth filed a response to defendant's request for bill of particulars on December 29, 2009.

The Commonwealth argues that the information requested by defendant constitutes discovery requests and as such, the information requested is not a proper subject to which a bill of particulars may be directed. (Bill of particulars, 12/29/09, ¶¶1-2, pp. 1-2.) On January 12, 2010, a hearing was held during which the district attorney indicated that he would have the investigating officers contact defense counsel to provide the names of people interviewed and witnesses (if any). The district attorney also advised defense counsel that both Officer Papi and Officer Chaffee would be testifying at trial. Defense counsel indicated that he was satisfied.

Based on the foregoing, we find that although the request for bill of particulars was untimely, the Commonwealth has adequately responded to defendant's requests in writing on December 29, 2009, and at oral argument on January 12, 2010. Consequently, defendant's request for bill of particulars is moot and nothing further remains to be decided at this time.

## Motion in Limine

Defendant seeks to "preclude the Commonwealth witnesses from claiming or stating or suggesting that the defendant was drunk, inebriated, under the influence of alcohol—or any similar testimony." (Omnibus motion, 12/8/09, p. 3.) Defendant argues that absent the charge of public drunkenness, "any such evidence would be highly prejudicial to defendant and could not be remedied

by a cautionary instruction to the jury." (Omnibus motion, 12/8/09, p. 3.)

Commonwealth admits in its brief that it cannot establish that defendant was in a "public place" (a critical element of the charge of public drunkenness) as required by the statute. (Brief on motion to amend, 3/31/10, p. 5) Therefore, inasmuch as a prima facie case cannot be established by the Commonwealth on the offense of public drunkenness, any evidence that defendant was drunk, inebriated, under the influence of alcohol—or any similar testimony must be excluded. However, the Commonwealth argues that evidence of defendant's alleged intoxication is still be admissible to show recklessness and/or to impeach the credibility of defendant should he testify in his own defense. Thus, we must determine whether evidence of defendant's intoxication should be admitted at trial to prove the charge of reckless endangerment and/or to impeach defendant's credibility should he testify in his own defense.

In Pennsylvania, a person is guilty of recklessly endangering another person (a misdemeanor of the second degree) if he/or she "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. §2705. "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Commonwealth vs. Hopkins,* 747 A.2d 910, 915 (Pa. Super. 2000), citing 18 Pa.C.S. §2301. To sustain a conviction for recklessly endangering another person, "the Commonwealth must prove that the defendant had an actual

present ability to inflict harm and not merely the apparent ability to do so." *Id.* "Danger, not merely the apprehension of danger, must be created." *Id.* at 916. "The mens rea for recklessly endangering another person is 'a conscious disregard of a known risk of death or great bodily harm to another person.'" *Id.,* citing *Commonwealth v. Peer,* 454 Pa. Super. 109, 115, 684 A.2d 1077, 1080 (1996). "Brandishing a loaded firearm during the commission of a crime provides a sufficient basis on which a fact-finder may conclude that a defendant proceeded with conscious disregard for the safety of other, and that he had the present ability to inflict great bodily harm or death." *Id.*

The Commonwealth argues that evidence of defendant's intoxication, in addition to his actual conduct, should be admissible to prove recklessness. We disagree. In the present case, it was dark when Officers Chaffee and Papi responded to a reported domestic dispute at defendant's residence. Officer Derek Chaffee testified that as he and Officer Papi were approaching the residence, he heard someone yell "[W]ho the fuck is on my property?" Officer Chaffee stated that as he turned to look in the direction of where the voice came from (which was the front yard where they had just been), he saw an individual (later identified as the defendant) standing pointing a gun in Officer Papi's direction. (N.T., 2/5/10/, pp. 30, 46.) Officer Chaffee stated that he immediately began to draw his firearm and yelled "police, police. Drop the gun." (N.T., 2/5/10, p. 30.) When defendant heard his voice, he turned toward Officer Chaffee pointing the gun in his direction. Officer Chaffee immediately took cover behind a vehicle that was parked in the

driveway. (N.T., 2/5/10/, p. 30.) At this point, defendant bent down towards the ground and disappeared. When he stood back up, he put his hands in the air and although he was ordered not to move, defendant walked out into the open with his hands still in the air. (Affidavit, 9/4/09.) After defendant was taken into custody, the officers found a 9 mm handgun on the ground with 10 rounds of 9 mm ammunition in the magazine. (Affidavit, 9/4/09.)

We find that this evidence is more than sufficient to allow the fact-finder to find defendant guilty of recklessly endangering another person. The fact that defendant brandished a loaded 9 mm handgun at the police officers is sufficient to show that he acted recklessly and that he had an actual present ability, and not merely the apparent ability, to place the officers in danger of death or serious bodily injury. Such actions are clearly enough for the fact-finder to conclude that defendant displayed "a conscious disregard of a known risk of death or great bodily harm to another person." For the foregoing reasons, we find that Officers Papi and Chaffee may testify about defendant's conduct of using profanity and of pointing the 9 mm handgun at them. However, with respect to evidence of defendant's alleged intoxication, we find that such evidence is not necessary to establish defendant's reckless conduct and that it would be more prejudicial than probative. Therefore, evidence of defendant's intoxication with respect to the charges of recklessly endangering another person and disorderly conduct must be excluded.

The Commonwealth also seeks to present evidence of defendant's intoxication in its case in chief in order to establish a foundation of evidence to justify its cross-

examination of defendant on his drinking for purposes of impeaching his credibility. (Com.'s brief on defense's motion in limine, 1/19/10, p.4.)

The Commonwealth asserts that the odor of alcohol on one's breath, glassy eyes, constant swaying, and slurred speech, in addition to impaired judgment is "conduct that, under Pennsylvania law, routinely proves that a person was 'manifestly under the influence of alcohol . . . to the degree that he may endanger himself or other persons or property' in fulfillment of the public drunkenness statute." (Com.'s brief on motion to amend information and defense's habeas petition, 3/31/10, p. 4, citing *Commonwealth v. Wright,* 832 A.2d 1104 (Pa. Super. 2003).) Even though the Commonwealth concedes that it cannot establish the charge of public drunkenness in this case, it argues that such "conduct also 'reasonably establishes intoxication,' rendering the evidence of intoxication admissible for impeachment purposes . . . ." (Com.'s brief, 3/31/10, p.5, citing *In the Interest of M.M.,* 439 Pa. Super. 307, 317, 653 A.2d 1271, 1276-77 (1995); *Lock v. City of Philadelphia,* 895 A.2d 660, 665-66 (Pa. Commw. 2006).)

In *Commonwealth v. McGuire,* 302 Pa. Super. 226, 448 A.2d 609 (1982), the court states that a fact witness may be questioned on cross-examination about his or her alcohol consumption in order to place in evidence the witness' ability to observe and recall. *In the Interest of Wright,* 265 Pa. Super. 278, 401 A.2d 1209, 1214 (1979), the court stated:

"[E]vidence of drinking is admissible only because it lays a foundation for an opinion of the intoxication of the witness. Intoxication, which numbs the faculties and

thus affects the witness' ability to observe and recollect, is the evidence necessary to impeach a witness' credibility." (citing *Commonwealth v. Godfrey,* 177 Pa. Super. 640, 644, 112 A.2d 434, 436 (1955) and 3A Wigmore, Evidence, §933 (Chadbourn rev. 1970)).

Presently, the Commonwealth intends to present the testimony of Police Officers Papi and Chaffee regarding their observations of defendant at the time of the incident. At the February 5, 2010 hearing, Officer Chaffee presented testimony that defendant was slurring his speech, he had an odor of alcohol on his breath, he had glassy eyes, he was constantly swaying, and he had a lack of physical control with a severe inability to maintain his balance such that he had to be physically held up by the police. (N.T., 2/5/10, pp. 32-33.) It is this evidence that the Commonwealth seeks to present at trial in order to establish defendant's recklessness and to establish a foundation to justify its cross-examination of defendant on his drinking. (Com.'s brief on defense's motion in limine, 1/19/10, p. 4.) The Commonwealth argues that "evidence of the defendant's intoxication implicates his ability to accurately recall the events of the night of the alleged assaults, so it becomes relevant impeachment evidence when he takes the stand." (Com.'s brief on defense's motion in limine, 1/19/10, p. 3.)

After reviewing the applicable case law, it is clear that intoxication, which can numb the faculties and thus, a witness' ability to observe and recollect facts, is evidence that is necessary to impeach a witness' credibility. *Wright, supra.* Therefore, if a defendant takes the stand as a fact witness, he may be cross-examined about his alcohol consumption in order to place his credibility into

question. *McGuire, supra.* Accordingly, we find that if defendant takes the stand as a fact-witness, the Commonwealth may cross-examine him about his alcohol consumption for the limited purpose of placing into evidence his ability to observe and recall the events on the night in question.

Accordingly, defendant's motion in limine as to evidence of intoxication is denied in part and granted in part.

## ORDER

And now, June 18, 2010, upon consideration of the Commonwealth's motion to amend information and defendant's request for bill of particulars and motion in limine, we find as follows:

(1) Commonwealth's motion to amend information is moot.

(2) Defendant's request for bill of particulars is moot.

(3) Defendant's motion in limine is denied with respect to impeaching the credibility of defendant. Accordingly, evidence of defendant's alleged intoxication shall be admissible to establish a foundation for cross-examination of defendant should he take the stand as a fact-witness, and only for the limited purpose of placing into evidence his ability to observe and recall the events on the night in question.

(4) Defendant's motion in limine is granted with respect to the charges of recklessly endangering another person and disorderly conduct. Thus, evidence of defendant's alleged intoxication shall not be admissible to prove that defendant acted in a reckless manner.