ERIC H. PETERS *vs.* ROLAND E. GAGNE *d.b.a.* GAGNE DRAIN SERVICE.

MARGARET I. PETERS *vs.* ROLAND E. GAGNE *d.b.a.* GAGNE DRAIN SERVICE.

APRIL 30, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

POWERS, J. These are two actions of trespass on the case for negligence brought by a husband and his wife to recover damages for personal injuries to the wife allegedly resulting from the negligence of the defendant and his employees. The cases were tried together to a superior court justice, sitting with a jury, and resulted in verdicts for the defendant. They are before us on the plaintiffs' bills of exceptions to certain evidentiary rulings, to the denial of their motions

for instructions to the jury as well as to certain instructions as given, and to the denial of their motions for new trials.

The evidence establishes that defendant, whose residence is adjacent to that of plaintiffs, is in the business of draining sewer lines. He was engaged by plaintiffs to connect their house with the sewer main on Genest avenue in the city of Pawtucket. The work was started at or about 2 p.m. on April 19, 1960 without prior notice to plaintiffs that digging would commence on that day.

It is also undisputed that neither plaintiff was home at the time defendant's employees commenced operations, nor when they finished for the day at or about 4:30. Mrs. Peters had left for Falmouth, Massachusetts, about 12:30 p.m. and arrived home about 10:30 that evening. Her husband, a truck driver, apparently after working all day, arrived home about 7 p.m.

He testified that after garaging his car he went over to his fence and observed the excavation where defendant's employees had been working. It was, he stated, some five or six feet deep, about three to four feet wide and some seven feet in length, running from the curb line to within a foot of the fence. This description is substantially corroborated by all the witnesses.

The evidence as to conditions surrounding the excavation is, however, in sharp dispute. Mr. Peters testified that he saw but one mound of earth, that there was no ladder over the ditch opening, and that the backhoe or "digger" was parked along the curb between the excavation and plaintiffs' driveway. His wife in her testimony also insisted that there was no ladder covering the excavation and was in general agreement with his testimony as to the location of the backhoe, but she placed the pile of earth in the street.

The defendant testified that the work was actually done by his brother and another employee, who had left before he returned about 5:30; that there were two mounds of

earth, one on each side of the excavation; that there was a ladder placed across the excavation running from one mound to the other; and that at about dusk he obtained two flares from his garage which he lighted after placing one on each mound, apparently at the curb line. This testimony was corroborated by his employee, Gerald B. Bergeron, except that relating to the flares, which were placed in position after he had left.

Mrs. Peters testified that she arrived home about 10:30 p.m. and that the car in which she was a passenger was driven past her gate to a point beyond the excavation. She walked across the sidewalk area along the fence towards her gate, walking between the fence and the inner edge of the excavation. She admitted seeing two flares, the piled earth and the backhoe, but denied that the excavation was covered by a ladder. It is also her testimony that she looked straight ahead and did not see the opening. A portion of her testimony, however, was inconsistent with a written statement attributed to and signed by her, although recorded by an investigator for an insurance company. She flatly denied having read the statement before signing it and stated that she had only read it quickly on the day she was called to testify.

In any event, it is undisputed that when she attempted to walk between the fence and the excavation her feet suddenly began to slip into the hole. Whether they slipped or the earth caved in under her is not definite, because as she says, "Everything happened very quickly." It is clear, however, that in an instinctive effort to save herself she flung her right arm over the fence and, at a point near the armpit, was impaled on a fence picket. This prevented her from falling into the excavation but severely lacerated the arm.

It is also undisputed that she managed to extricate herself after repeatedly but unavailingly calling for assistance. She made her way to her home but was unable to arouse

her husband, or to let herself in, having lost the door key in her fall. Abandoning efforts to awaken him she went next door to the home of defendant.

There, he wrapped the arm in a towel and then drove Mrs. Peters to the hospital where she was operated on immediately and remained for six days. The record also establishes that she returned a month or so later for skin grafting and was again hospitalized for about a week. For several weeks she was unable to do any household work and was without the full use of her arm for some six months.

The defendant was called by plaintiffs under G. L. 1956, §9-17-14. When their examination of defendant was completed, counsel for defendant asked what he noticed about Mrs. Peters during the ride to the hospital. He replied, "She had a cocktail probably—." On plaintiffs' motion the answer was stricken as something not observed. The defendant was then asked whether he observed an odor of alcohol on Mrs. Peters. He replied, "There was a slight odor on her breath." Over plaintiffs' objection, the answer was permitted to stand and their exceptions to this ruling were pressed before us.

Howard E. Boyd, the operator of the car on the trip to and from Falmouth, testified that he saw the "dirt and digger," but that he could not recall their location or whether there were one or two mounds of earth. Neither did he recall seeing any flares, but he corroborated Mrs. Peters' testimony as to the time of departure and return, driving past the excavation, his immediate departure after she had alighted and, significantly, that she had but one drink more than two hours before the accident.

The plaintiffs have pressed numerous exceptions, but in the view we take of the proceedings we deem it necessary to consider only exceptions numbered 2, 3 and 17. They relate to admission by the trial justice of the testimony concerning the consumption of an alcoholic beverage by Mrs. Peters sometime prior to her accident.

Since our ruling as to each exception considered will relate to both cases, we will consider such exceptions as though only those of the plaintiff wife were before us, but our decision will apply to both cases.

The plaintiff contends that the effect of this testimony was to prejudice her in the eyes of the jury, relying on the proposition that nothing less than intoxication may be shown. In support thereof, she cites *O'Brien* v. *Waterman,* 91 R. I. 374, and quotes therefrom language used in *Commonwealth* v. *Godfrey,* 177 Pa. Super. 640. There, that court stated at page 644: " 'Whether one may have partaken of some liquor is not a test of one's credibility and is the type of question, whether answered in the affirmative or negative, that may create in the minds of some jurors a most unfavorable inference.' "

The defendant argues, however, that assuming *Godfrey* to have been adopted as the law of this jurisdiction, proof of intoxication is necessary only when the question of drinking goes to the issue of credibility. Here, he urges, the testimony went not to the witness' credibility, but to the issue of her due care. In this regard, he contends that the extent of a plaintiff's drinking is peculiarly within the knowledge of the plaintiff and it is proper for the trial justice to permit interrogation by the defendant in cross-examination for the purpose of establishing such extent in fact.

Assuming without deciding, however, that there is merit in this contention, such a rule is of no avail to the instant defendant. After he had been permitted to testify over an objection which is the subject of plaintiff's second exception that he had observed "a slight odor on her breath," plaintiff in cross-examination was specifically asked whether she had anything to drink that evening. Over objection Mrs. Peters replied, "Yes, I had a cocktail about 6:30." No exception was taken to the ruling of the court in this instance.

Thereafter, defendant called Howard E. Boyd, plaintiff's driver, who was asked, "* * * did Mrs. Peters have anything

to drink in your presence that day?" He was allowed to reply, again over objection, that Mrs. Peters had one old fashioned. This ruling is the subject of plaintiff's seventeenth exception.

It is apparent from the foregoing that the extent of plaintiff's drinking could not be found by the jury to have consisted of more than one cocktail several hours prior to the time of the injury. In our judgment this was evidence of an act so remote as to be without probative force and, in the nature of things, clearly prejudicial. The question of social drinking is, as a matter of common knowledge, so controversial as to have established what appears to be the majority rule that nothing less than intoxication is an element of proof on the issue of negligence. 38 Am. Jur., Negligence §322, p. 1019.

Moreover, in our judgment, justice requires that the law recognize a distinction between evidence of a defendant's negligence and a plaintiff's due care where, as in the instant case, plaintiff had no reason to anticipate the situation with which she was later confronted. See *O'Brien* v. *Waterman*, 91 R. I. 374, and *Shine* v. *Wujick*, 89 R. I. 22.

Assuming, therefore, that the question directed to defendant in the first instance and later asked of plaintiff was proper inquiry as to the extent of her drinking, we are of the opinion that, in the light of those answers, the trial justice should not have permitted further interrogation along this line.

The defendant further contends, however, that, even so, the failure of plaintiff to have taken an exception to the ruling of the trial justice, whereby she was required to answer a specific question as to the extent of her drinking, was fatal in that the evidence thus became a part of the record to be considered by the jury, citing *Pettit* v. *Howard & Bullough Am. Mach. Co.*, 41 R. I. 380. There, however, the plaintiff relied in part on the evidence to which she had

objected and this court found that the record indicated a waiver of her objection.

In the instant case the objection to which no exception was taken to preserve plaintiff's rights was to a line of inquiry to which other similar objections were made and exceptions taken. In *Louisville & Nashville R.R.* v. *Rowland's Adm'r,* 215 Ky. 663, it was stated that where the court has ruled evidence admissible and proper exceptions have been reserved, further objection to the same line of interrogation is not required to save the question for review. See also *Allen* v. *Allen,* (Mo.) 60 S. W.2d 709, and *Hall* v. *Rice,* 117 Neb. 813. While the ,Kentucky court held that even subsequent failure to object would not be fatal, we do not deem it necessary to go so far by way of embracing the import of the rule as expressed in *Louisville & Nashville R.R.* v. *Rowland's Adm'r, supra.* Here, although plaintiff took no exception, she did register her objection.

Thus, in the instant case the plaintiff at no time can be said to have waived her original exception or to have participated in any way in permitting the objectionable testimony to become a part of the record. In the light of the prejudice we feel to have been engendered by the testimony in question, we are of the opinion that the plaintiff's exceptions relied upon should be sustained.

In each case the plaintiff's second, third and seventeenth exceptions are sustained and each case is remitted to the superior court for a new trial.

ROBERTS, J., concurring. I concur in the conclusion of the court in this case but desire to stress my view as to the limited scope thereof. The issue raised is whether evidence of the consumption of an alcoholic beverage as distinguished from intoxication is admissible on the issue of the plaintiff's contributory negligence. This question confronted the court in *O'Brien* v. *Waterman,* 91 R. I. 374, wherein the defendant contended that the trial justice erred in exclud-

ing testimony of an attending physician that he had noted an odor of alcohol on the plaintiff's breath while treating him after the accident. This court, however, did not pass upon the question, noting that if such testimony were held to be admissible, its exclusion in the circumstances was not prejudicial error, the record being barren of other evidence probative of the plaintiff's failure to exercise reasonable care for his own safety. In this case defendant is contending that it was not error to admit such evidence on the issue of whether the plaintiff was in the exercise of due care at the time of her injury.

No claim is made that plaintiff was intoxicated, the evidence being offered only for the purpose of establishing the consumption of some alcoholic beverage for whatever probative force it might have on the issue of plaintiff's due care for her own safety. In other words, it is not a case in which intoxication has been alleged as an act of negligence from which injury to the plaintiff resulted as a natural and probable consequence. *Small* v. *Boston & Maine R.R.*, 85 N. H. 330. Neither is it a case in which evidence of the use of liquor was offered to establish intoxication as a condition to be considered by the jury on the question of the probability that plaintiff was incapable of exercising reasonable care for her own safety. *Dokus* v. *Palmer*, 130 Conn. 247.

The admissibility of evidence as to the consumption of an alcoholic beverage offered for the purpose of establishing intoxication ordinarily will be controlled by the nature of the issue raised in the pleadings. Where intoxication is put into issue by an allegation that it constituted an antecedent act of negligence upon which liability is predicated or that it created a condition indicating improbability of a capacity to exercise due care, such evidence of the consumption of an alcoholic beverage may have such probative force on that issue as to warrant its admission into evidence

We are not aware that this court ever decided that intoxication is negligence per se or that, if proved, it is evidence to be considered by the jury on the question of the probability of incapacity to exercise reasonable care for one's own safety. In *Vizacchero* v. *Rhode Island Co.*, 26 R. I. 392, decided in 1904, this court held that the plaintiff had failed to establish any negligence on the part of the defendant transportation company. It went on, however, to say by way of dicta at page 399: "If the plaintiff's intestate had impaired his ability to take care of himself by getting intoxicated, that fact in no wise affects the case. Intoxication does not relieve a man from the degree of care required of a sober man in the same circumstances." In other words, this court has indicated that on the issue of contributory negligence intoxication will not excuse one from the obligation to exercise the care required of a sober man in the same or similar circumstances; that is to say, the test is always that of a reasonably prudent man without regard to the question of sobriety. The extent to which this makes intoxication immaterial on the issue of negligence, absent some appropriate pleading, we do not decide.

Whatever might be the rule in cases where intoxication is put in issue by the pleadings, however, the question with which we are confronted here is whether testimony as to the consumption of an alcoholic beverage should ever be allowed into evidence where intoxication is not in issue. It would appear that in some jurisdictions testimony that merely establishes the consumption of an alcoholic beverage is evidence that should be submitted to a jury for consideration along with other evidence on the question of negligence. *Roether* v. *Pearson*, 36 N. J. Super. 465. I cannot accept the view that testimony is admissible merely to establish the consumption of alcohol as distinguished from proof of intoxication. It is my opinion that the better rule is stated in *Fisher* v. *Dye*, 386 Pa. 141. In that case the court said at page 148 that "while proof of intoxication

is relevant where reckless or careless driving of an automobile is the matter at issue, the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial * * *."

If there be any sound ground for the admission into evidence of testimony concerning the mere consumption of an alcoholic beverage, it must be that it is of such probative force on the issue of reasonable care as to justify its admission despite its notorious tendency to create prejudice in the minds of jurors. Speaking of the prejudicial potential of such evidence, the court said in *Critzer* v. *Donovan*, 289 Pa. 381, 385: "Such testimony directly tends to raise in the minds of the jurors another issue,—whether he was intoxicated,—which, in the absence of other evidence, should not have entered into the determination of the case."

I find inescapable the conclusion that the admission of such testimony when intoxication is not in issue clearly imports the question of intoxication into the deliberations of the jury. Not the least of the evils thereof is that it opens the door to the injection of the half-truth and the distorted fact into the judicial process with the usually inevitable consequence of a prejudiced determination as to liability. For these reasons I concur in the ruling that the admission of testimony concerning the plaintiff's consumption of an alcoholic beverage on the day of her injury constituted reversible error.

JOSLIN, J., concurs in the concurring opinion of Mr. Justice Roberts.

*William R. Goldberg, Ronald R. Gagnon,* for plaintiffs.

*Boss, Conlan, Keenan, Bulman & Rice, John T. Keenan,* for defendant.