STATE

v.

**James S. O'DELL.**

No. 88–417–C.A.

Supreme Court of Rhode Island.

June 13, 1990.

James E. O'Neil, Atty. Gen., Jane M. McSoley, Annie Goldberg, Sp. Asst. Attys. Gen., for plaintiff.

John A. MacFayden, III, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case is before us on the defendant's appeal from his conviction on three counts of first-degree sexual assault for which he was sentenced to thirty years imprisonment, fifteen to be served and the remaining fifteen to be suspended. We vacate the conviction and order a new trial. The facts of the case insofar as pertinent to this appeal are as follows.

The defendant James S. O'Dell met the victim at a cocktail lounge in Newport in August 1985. Approximately two weeks later, defendant moved into the victim's home and they began a sexual relationship. In the following months the relationship began to deteriorate. After returning from a Thanksgiving trip together to New Jersey, during which there had been frequent arguments, defendant moved out of the victim's home and back into a vacant house owned by his mother at 58 Weetamoe Lane in Portsmouth. Approximately two weeks later defendant moved back into the victim's home. The brief hiatus was of no apparent benefit as they began to argue frequently once again. The relationship degenerated to a point where the victim would sleep on the living-room couch while defendant slept in her bed.

The relationship apparently reached its breaking point on the evening of December 21, 1985, when defendant and the victim went to a local retail store. On the way home from the store the two engaged in a somewhat turbulent argument while in the car stopped in an intersection. At one point the victim signalled to a passing motorist and asked her to notify the police. Before the police came, however, defendant and the victim had proceeded to the vacant house at 58 Weetamoe Lane. The victim claimed she was forced to drive to this location, while defendant claimed they mutually agreed to go for the purpose of talking things out.

Once inside the house the two engaged in a series of arguments. At one point defendant retrieved a fencing sword from a closet. He made the victim sit in a chair, placed the handle of the sword against her chest and the pointed end against his own chest. He then remarked, "if you are going to break up with me, then I want you to kill me now." Thereafter there occurred a series of sexual penetrations of the victim by defendant. The victim left the house sometime after 2:00 a.m. the following morning and contacted a friend and a rape-crisis center. The next day she contacted the police.

Relying on interviews with the victim, the police obtained an arrest warrant for defendant. They contacted defendant's mother and asked her permission to search the house at 58 Weetamoe Lane, and she gave them the keys. The police awakened defendant and arrested him in the bedroom of the house.

In support of his appeal defendant raises three issues with which we shall deal separately.

### I

#### Motion to Suppress

Prior to trial defendant filed a motion to suppress the evidence seized, namely, a fencing sword or epee, during what he asserted was an illegal entry, search, and arrest. Specifically he argued that because he was arrested in a home belonging to a third person (his mother), and the police did not obtain either a search warrant or the owner's valid consent to search, the entry by police into the house was unlawful. We must disagree and find that the trial justice was correct in denying the motion to suppress.

The facts reveal that defendant was arrested at a house at 58 Weetamoe Lane in

Portsmouth. Although almost entirely vacant at the time, the house was owned by defendant's mother. Prior to arresting defendant, the Portsmouth police met with defendant's mother Nancy O'Dell and asked for her consent to search this house. During this meeting the police informed her that they had an arrest warrant for her son, and that they believed that he might be found at the house. They further informed her that they believed there was a possibility that her son might be considering suicide. Mrs. O'Dell eventually provided the police with the keys to the house at 58 Weetamoe Lane and gave them express permission to enter and look for her son. She declined an offer by the police to accompany them on this search. She testified that she believed that if she did not give her consent, the police were going to search the house anyway. The defendant contends that as a result of the manner in which the police obtained this consent, it was not given freely and voluntarily, and as such, their entry of the house predicated upon this consent was unlawful.

■ The state bears the burden of establishing that the "consent to a search is freely and voluntarily given." *State v. Beaumier*, 480 A.2d 1367, 1374 (R.I.1984). In a Fourth Amendment context, the state must prove this fact by a fair preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177–78 n. 14, 94 S.Ct. 988, 996 n. 14, 39 L.Ed.2d 242, 253 n. 14 (1974); *State v. Tavarez*, 572 A.2d 276 (R.I.1990). In the present case we find that the actions of Mrs. O'Dell in offering the keys to the house and explicitly authorizing the police to enter and search for her son clearly establish by a fair preponderance of the evidence that her consent was given freely and voluntarily. We reject

defendant's contention that Mrs. O'Dell's actions were simply "no more than acquiescence to a claim of lawful authority," as described in *Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968).

■ Even if we were to hold that Mrs. O'Dell's consent to search the house was invalid, we find defendant's claim that the police needed a search warrant in addition to the arrest warrant in order to enter the home is incorrect. In support of this theory defendant relies on the United States Supreme Court's holding in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). In *Steagald* the Court held that in order to enter the dwelling of a third party to search for and execute an arrest warrant upon a suspect believed to be present therein, the police must also obtain a search warrant if they seek to introduce evidence of the fruits of the entry against the third person. The present case, however, is clearly distinguishable from *Steagald*. In *Steagald*, unlike the case now before us, it was the third-party homeowner who was being prosecuted for the possession of contraband found by government agents attempting to arrest a guest in the house pursuant to an arrest warrant. The Court found in *Steagald* that because the arrest warrant afforded no protection to the homeowner, the seizure and the prosecution resulting from the police intrusion were in violation of the Fourth Amendment. Clearly it is the third-party homeowner who is within the scope of protection offered by the *Steagald* decision and not the person arrested pursuant to the arrest warrant. Thus defendant has no standing to assert the protections offered by the *Steagald* holding.[1]

---

**1.** After this case was argued on March 8, 1990, the Supreme Court of the United States decided the case of *Minnesota v. Olson*, —— U.S. ——, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). The defendant has filed a supplemental suggestion that *Olson* may affect an issue which defendant raised pursuant to *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). We must respectfully disagree with any such suggestion.

The Supreme Court in *Olson* decided that the defendant had standing to raise a defense based upon *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), by virtue of the fact that he had a reasonable expectation of privacy in his capacity as an overnight guest in a dwelling house that was occupied by his friends Louanne and Julie Bergstrom. The Supreme Court of Minnesota had held that *Payton* applied since the police did not have a warrant for Olson's arrest and there were no exigent

Additionally the trial justice could have reasonably found, and did in fact make a finding, that the house on Weetamoe Lane was defendant's home. Despite defendant's assertions that he was a homeless person, there was ample evidence offered that defendant had been living in the house prior to his moving in with the victim and that he had referred to it as "his house." Thus the trial justice could have reasonably found that the arrest warrant alone was sufficient to justify the entry by the police into the house. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

## II

### The Motion for Judgment of Acquittal

During trial defendant moved for a judgment of acquittal on two of the three counts of first-degree sexual assault. Essentially he argued that the alleged sexual assaults were in fact one act and not three individual acts. We conclude, however, that there was adequate evidence presented to indicate that there were three separate acts, and as such, the trial justice properly denied the motion for judgment of acquittal.

▆▆▆ In order for a judgment of acquittal to be granted, the trial justice must view the evidence in the light most favorable to the state and draw all reasonable inferences consistent with the guilt of the defendant. The motion should be granted only if the evidence so viewed and without regard to either its weight or its credibility is not sufficient to warrant a jury in finding guilt beyond a reasonable doubt. *State v. Sundel*, 121 R.I. 638, 644–45, 402 A.2d 585, 589 (1979). In the case at bar, the victim testified that after defendant had appeared to have completed the first episode of sexual intercourse on the living room floor, a conversation ensued, during which defendant said to the victim, "you

don't hate me enough. And you will go home when I say you can go home." At this point defendant began to have sexual intercourse with the victim again. At some point thereafter, defendant complained of rug burns and took the victim into the bedroom wherein he again had intercourse with her. In addition defendant himself admitted that the two engaged in sexual intercourse at least two times that evening, but he claimed that all were consented to by the victim.

In light of this testimony presented at trial, we are of the opinion that, when viewed in a light most favorable to the state, it could be found beyond a reasonable doubt that three distinct sexual assaults occurred, and that therefore the motion for judgment of acquittal was properly denied.

## III

### Is Defendant Entitled to a New Trial?

The defendant seeks a new trial, alleging that the state had failed to comply with discovery pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure. Specifically, defendant argues that the state failed to reveal the identity and the nature of expected testimony from a witness whom the state called at trial. This motion was denied by the trial justice. After reviewing the record, we must conclude that there was in fact a failure of discovery on the state's part that prejudiced defendant, and that evidence offered by the state on rebuttal should have been excluded.

The Rhode Island criminal discovery rule is a broad, reciprocal discovery device that requires the state to disclose the existence of all statements, whether reduced to writing or not, and the identity of all witnesses whom the state expects to call in support of its direct case. We have previously interpreted our Rule 16 as "among the most liberal and complete reciprocal mechanisms

circumstances that justified their arresting Olson in a dwelling where he had a reasonable expectation of privacy in the absence of a warrant. Obviously this case is of no assistance to defendant for whom the police had a warrant of arrest that could have been served upon him in

his own dwelling or in any other dwelling in which he had a reasonable expectation of privacy. *Olson* did not in any way involve the *Steagald* issue which has been dealt with in the body of this opinion.

for discovery to be found in any jurisdiction in the United States, either state or federal." *State v. Darcy,* 442 A.2d 900, 903 (R.I.1982).

In the present case defendant took the stand to testify in his own defense. On direct examination he testified that his relationship with the victim was rather turbulent, and included instances of irrational behavior and violent argument. At no point during direct examination did defendant refer to any conversations he may have had with Catherine Stephenson, the victim's daughter, concerning his relationship with her mother. On cross-examination, however, the prosecutor began to question defendant about conversations he had with Catherine just before the incident giving rise to this case occurred. The relevant questioning is as follows:

"Q. Do you recall having a conversation with [the victim's] daughter [C]athy regarding your relationship with her mother?

"A. No. I had a conversation with Tim.

 \* \* \* \* \* \*

"Q. During that five or six day period, do you remember telling [C]athy Stephenson that her mother was not sleeping with you?

"A. No. \* \* \*

"Q. And its your testimony that you don't recall any conversation, at any time, with [C]athy Stephenson regarding her mother not sleeping with you?

"A. I don't recall any conversation with [C]athy at all that week, no."

At a later point in the trial, over defense counsel's objection, the state called Catherine Stephenson in rebuttal to testify concerning the contents of a conversation she remembered having with defendant. The state had never disclosed the fact that it intended to call this witness nor had they disclosed the existence of any of defendant's statements to her. The prosecutor acknowledged that he knew of this witness and had contacted her but did not disclose her existence to defendant because he did not plan to call her at trial. In rebuttal, Catherine Stephenson testified that defendant had told her the night before the incident:

"that he was sick of my mother being frigid and cold, and that it was causing a lot of hardship in their relationship, and the fact that she wouldn't have sex with him, and he, that he was angry about this, and he was sick and tired of playing these games."

 Clearly these statements made to Catherine Stephenson could not have been admissible as part of the state's case in chief as a result of the nondisclosure of such statements in response to discovery requested by defendant pursuant to Rule 16. We recognize that evidence that may not be admissible in the prosecution's case in chief may be used in rebuttal in order to counter false statements made by the accused in the course of his direct testimony. Such a doctrine has been applied in the prosecution's utilization of illegally obtained evidence in rebuttal. *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). The use of such rebuttal evidence, however, has been limited by the Supreme Court of the United States to situations wherein the defendant has made a false statement in his direct testimony that can be exposed as untrue by the use of the illegally obtained evidence. Therefore, such illegally obtained evidence may not be used in order to contradict defendant's testimony on an issue raised by the prosecution. *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). In sum the prosecution may not manufacture an issue in the course of cross-examination for the purpose of impeaching the credibility of defendant by the use of evidence or testimony that would otherwise be inadmissible.

 In the case at bar we are of the opinion that the prosecution, by introducing the collateral issue of defendant's statement to Catherine Stephenson, was not in any way contradicting any issue raised by defendant in his direct testimony. The defendant had honestly admitted during direct examination that his relationship with the alleged victim had been stormy and volatile. He freely admitted that they were not on good terms and that their most

recent contacts had been anything but harmonious. Consequently the statements allegedly made by defendant to Catherine Stephenson did not tend to rebut anything stated by defendant in his direct testimony. Its only purpose was to create an issue upon which defendant's credibility could be attacked. The attack upon his credibility in this case where credibility was all important could have no result other than a highly prejudicial effect.

We have long held that the imposition of any Rule 16 sanction is within the sound discretion of the trial justice. *State v. Silva,* 118 R.I. 408, 411, 374 A.2d 106, 108 (1977). We have also recognized, however, that "[i]f no other available discretionary measures can possibly neutralize the harmful effect of improperly admitted evidence, then a mistrial *should* be declared." (Emphasis added.) *State v. Darcy,* 442 A.2d 900, 902 (R.I.1982).

We must conclude that the state failed to comply properly with discovery by not disclosing the existence or the nature of this witness's testimony. Such testimony should have been excluded when offered on rebuttal, and the failure to exclude may have greatly prejudiced the defendant's case. Consequently we are of the opinion that the defendant is entitled to a new trial.

For the reasons stated, the defendant's conviction is vacated and the case is remanded to the Superior Court for further proceedings consistent with this opinion.