STATE

v.

Ernest R. SANDERS.

No. 91–234–C.A..

Supreme Court of Rhode Island.

June 22, 1992.

James E. O'Neil, Atty. Gen., Aaron Weisman, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin and Barbara Hurst, Asst. Public Defenders, for defendant.

OPINION

KELLEHER, Justice.

The defendant, Ernest Sanders (Sanders), was charged with two counts of first-degree sexual assault. Trial commenced before a jury sitting in Providence County on June 12, 1990. On June 14, 1990, the jury returned with a guilty verdict on one count and a not-guilty verdict on the other count. Sanders is now before this court on appeal whereby he claims that the trial justice abused his discretion by permitting the victim's sister to testify in rebuttal of Sanders's direct testimony. Hereafter we shall refer to the victim by the fictitious name of Jane. The facts are as follows.

Jane testified that in the early evening of April 18, 1987, she left her sister's apartment in Pawtucket and began the walk to her mother's residence in Central Falls. On her way she recognized the driver of a passing car as Richard Chicione (Chicione) and flagged him down. Jane stated that although she knew Chicione as a friend of her husband's, she did not recognize Sanders, who was in the passenger seat and who identified himself as Ray. Jane asked Chicione for a ride and joined the two men in the car. Once inside, Jane agreed to accompany the two men to their apartment building in order to smoke marijuana.

Jane told the jury that the trio proceeded to Sanders's second-floor apartment where they smoked a marijuana cigarette and then Chicione departed. Jane stated that soon after Chicione left, Sanders put money down her shirt and told her she knew what to do. She recalled giving the money back to Sanders, at which time he became angry and pinned her down on a pull-out couch. Jane said Sanders then held her down by the neck and managed to get some of her clothes off. Jane testified that she tried in vain to repel Sanders but was overcome by his strength. At one point Sanders punched her on the side of the head with a closed fist and threatened further abuse if she continued to resist. Jane

claimed that throughout the ten-to fifteen-minute attack, she screamed for help when she got the chance. Jane stated that during the attack someone knocked on Sanders's door, and when he answered it, she ran out into the hallway.

The person who knocked on Sanders's door was Joseph Cross (Cross), the owner and landlord of the apartment building. Cross testified that in the early evening of April 18, 1987, he was engaged in paperwork when a "muffled sound or a woman's voice" attracted his attention. Cross described the voice as "various degrees of screams, pleads and other things" and discerned the words "please, Ray, stop, please let me go" and "can I go now?" Cross became concerned that a woman was in trouble and traced the noise to Sanders's apartment where he knocked on the door. Cross testified that Sanders was naked when he opened the door and that at this time Jane ran out of the apartment naked from the waist down with her pants in her hand. Cross said he escorted Jane downstairs and called the police, who responded to the scene and placed Sanders under arrest.

Sanders's version of the events that occurred on April 18, 1987, was markedly different from the description given by Jane. Sanders testified that around noontime on April 18 he went with Chicione to purchase marijuana. En route, they spotted a woman waving at them whom Chicione recognized. Sanders testified that when the men informed the woman of their plans to go to Prospect Heights and purchase "weed," she asked to go along. Sanders claimed that the threesome completed the marijuana acquisition and also purchased two six-packs of beer before proceeding to Chicione's apartment. Sanders said that while in Chicione's apartment Jane drank a bottle of wine while the two men imbibed several beers each, and all three shared in the smoking of several marijuana "joints."

Sanders testified that after a few hours he and Jane left Chicione's apartment and proceeded to his apartment down the hall. He stated that Chicione stopped by briefly but soon left. Sanders asserted that after Chicione departed, he and Jane engaged in consensual vaginal intercourse on more than one occasion. Sanders said he and Jane were both intoxicated, which made them loud and "rowdy." Sanders recalled that Jane left his apartment a couple of times to use a community bathroom and twice went to a nearby package store to replenish their supply of liquor. It was Sanders's testimony that Jane willingly had sex with him, but when Cross came knocking on the door, she became upset and started yelling.

Sanders claims on appeal that the trial justice erred in permitting the state to present the testimony of Jane's sister, Cynthia, in the guise of rebuttal because she was not previously disclosed, as is required by Rule 16 of the Superior Court Rules of Criminal Procedure. After Sanders testified on his own behalf, the state called Cynthia, who testified that Jane visited her apartment on the afternoon of April 18, 1987, and did not leave there until 5 p.m. The time frame that Cynthia testified to obviously rebuts Sanders's testimony that he was with Jane all afternoon.

In support of his argument that the prosecution violated Rule 16(a)(7), Sanders notes that he requested a summary of the expected testimony of witnesses the state intended to call at trial and was not furnished with any information regarding Cynthia. The state argues that it never expected to call Cynthia to testify and that the need for her presence as a rebuttal witness only became apparent after Sanders testified.

Sanders cites *State v. O'Dell*, 576 A.2d 425 (R.I.1990), to buttress his argument. In *O'Dell* the defendant, who was charged with first-degree sexual assault, was questioned on cross-examination about conversations he had had with the victim's daughter just prior to the alleged sexual assault. The defendant testified that he did not recall having any conversations with the daughter. Later during the trial, over the defendant's objection, the state was permitted to call the daughter as a rebuttal witness. Specifically the daughter testified

that the defendant had said that he was angry at the victim because she would not have sex with him. *Id.* at 429.

In *O'Dell* this court ruled that the trial justice committed reversible error in permitting the daughter's rebuttal testimony. Initially the court noted that the testimony would not have been admissible in the prosecution's case in chief because it had not been disclosed in response to the defendant's request for Rule 16 discovery. Second, we noted that during direct examination the defendant had not denied that he and the victim had a volatile relationship. In this court's view, the prosecution had simply manufactured an issue upon which to attack the defendant's credibility. *Id.* at 429–30.

We find the instant controversy to be distinguishable from *O'Dell*. Certainly Cynthia's testimony would not have been admissible had the prosecution attempted to use it in its case in chief because it had not been disclosed in response to Sanders's request for Rule 16 discovery. However, unlike *O'Dell*, where the rebuttal witness was used to refute statements adduced by the prosecution's cross-examination of the defendant, in the instant matter Cynthia's testimony contradicted only the direct testimony of Sanders regarding the time he and Jane spent together.

The issue raised in this appeal may be readily resolved by our holding in *State v. Lawrence*, 492 A.2d 147 (R.I.1985). In *Lawrence* the defendant was charged with having sexually assaulted a minor. The victim, who was eight years old, was the state's only direct witness and testified that he and the defendant engaged in sexual acts in a wooded area across from a laundromat where his mother worked. The defendant took the stand in his own defense and testified that he had not been in the wooded area for the past ten years. In response, the state called the victim's mother to testify in rebuttal that she had seen the victim and the defendant leave the wooded area on a specific occasion. *Id.* at 148.

In *Lawrence* the defendant's Rule 16 motion for discovery requested "[a] written list of the names and addresses of all persons whom the attorney for the state intends to call as witnesses at the trial *in support of the state's direct case.*" 492 A.2d at 149. In holding that the trial justice did not abuse his discretion in allowing the victim's mother to testify, this court noted:

"The defendant did not request the names of, or a summary of the likely testimony of, witnesses the state intended to call in rebuttal. Even had such a request been made, it would likely have been an impossible one to fill. The state had no way of knowing if it would call a rebuttal witness and, if it did, what that witness would be called upon to rebut. Although Rule 16 provides for reciprocal discovery, it does not require a criminal defendant to make known whether he will testify at trial. Nor does it require the defendant to furnish a summary of his expected testimony. The state had no way of knowing that defendant would take the stand and deny ever having been in the woods with [the victim]. It certainly did not know that defendant would testify that he had not been in the woods at any time during the past ten years." *Id.*

This court has noted that it is within the "sound discretion of the trial justice" to impose sanctions including prohibiting a party from introducing into evidence material that was not disclosed pursuant to Rule 16. *State v. Engram*, 479 A.2d 716, 718–19 (R.I.1984). In the instant controversy the trial justice was correct in finding that the state did not violate Rule 16(a)(7) and therefore properly allowed Cynthia to testify as a rebuttal witness. As the trial justice appropriately noted:

"[The state] put on a rebuttal because she testified that she was with the sister during those hours in the afternoon and obviously, the sister could not have been with the defendant at that time. Clearly, a rebuttal witness. The state could not have supplied this information to the defendant because they didn't know what the defendant was going to say. They didn't know if he was going to take the

stand or not and based on the testimony of the complaining witness, they weren't aware of this 1:30, 2:00 in the afternoon time difference. So, they could not have responded under Rule 16. I think she was certainly * * * a valid rebuttal witness in the true sense of the word. She was put on to rebut the credibility of the defendant. I read the *O'Dell* case and I think the facts are different."

Similarly to the defendant in *Lawrence*, when Sanders took the stand, he ran the risk that the state would call a witness to rebut his testimony. Furthermore, unlike the testimony of the rebuttal witnesses in *O'Dell* and *Lawrence*, Cynthia's testimony was strictly limited to the question of time and contained no other information that could have prejudiced Sanders.

For the reasons set forth above, Sanders's appeal is denied and dismissed and the judgment of the Superior Court is affirmed.