**STATE**

v.

James CARVALHO.

No. 2004–363–C.A.

Supreme Court of Rhode Island.

March 7, 2006.

Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfeld, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The defendant, James Carvalho (defendant), appeals from a Superior Court conviction for felony assault and eluding a police officer.

This case came before the Supreme Court for oral argument on December 12, 2005, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments and examining the record and the memoranda that the parties filed, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth below, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The incident in question occurred in the early morning of June 2, 2003. In the hours prior to the assault, defendant had completed a job in the Warwick area. At around 8 p.m., defendant parked his car in the parking lot of a Chinese restaurant. According to defendant, after a light snack at that restaurant, he walked around West Warwick for approximately three hours before returning to his car at around 11:30 p.m. He then proceeded to drive around West Warwick. No party disputes that defendant was driving erratically; according to defendant, he was lost and therefore drove at an inconsistent speed, and at one point may have driven the wrong way on a one-way street. Officer Jason Senerchia (Senerchia), a West Warwick patrolman who was off duty at the time and driving his own vehicle, began to follow defendant's car, honking his horn and flashing his high beams.

What happened next is in dispute. According to Senerchia, defendant pulled into the parking lot of an auto body shop, and when Senerchia approached defendant's car, defendant deliberately drove at Senerchia, who instinctively pushed himself

away from the path of the car with his foot and hands. The defendant denies the occurrence of this incident. The defendant does admit to pulling into a second parking lot, that of Tomaselli's Grill and Bar (Tomaselli's), upon realizing he was being pursued by at least one police car. In the parking lot of Tomaselli's, Senerchia and two other West Warwick police officers arrested defendant. The defendant was charged by an information with assault with a dangerous weapon—here, an automobile—and eluding a police officer.

On February 17, 2004, before the trial began, defendant made a motion *in limine* for an order prohibiting the state, in relevant part, from making any reference to evidence regarding defendant's demeanor on the night in question that might point to intoxication. In a hearing on the motion *in limine,* counsel for defendant argued that the probative value of the officers' observations regarding possible intoxication was outweighed by its potential to unfairly prejudice defendant. In his ruling, the trial justice excluded the following evidence: defendant's appearance, any odor of alcohol, watery or glassy eyes, unsteadiness on his feet, an arresting officer's observation that defendant appeared intoxicated and that his eyes were very bloodshot, that he tripped on his words, and that he had a strong odor of alcohol on his breath. However, the trial justice qualified this ruling with the following warning: "[I]f the defendant takes the stand, depending on what he testifies to, *he may very well open the door to those other matters coming in[to] evidence on rebuttal.*" (Emphasis added.)

Trial was held before a jury on February 18 and 19, 2004. The main issue at trial was determining what exactly took place on the early morning of June 2, 2003, during the period immediately preceding defendant's arrest. The defendant and the state each presented a differing picture of the relevant events. Put simply, the arresting officer drew a portrait of a belligerent man who endangered other drivers and assaulted an officer of the law, while defendant painted himself as an outsider to Rhode Island who, after a long day of work, found himself lost as he tried to navigate a series of confusing one-way streets, and panicked when a car following him began flashing its lights and honking its horn.

At trial, Senerchia testified that he observed a silver-gray Toyota driving the wrong way on a one-way street in West Warwick. Senerchia was off duty at the time, having just completed his shift at midnight, and he was driving home in his police uniform in his personal vehicle. Senerchia's "concern[ ] for public safety" led him to follow defendant's vehicle "a couple car lengths" behind, honking his horn and flashing his lights to try to get the vehicle to pull over. The vehicle eventually pulled into the parking lot of an auto body shop. Senerchia exited his vehicle and approached the silver-gray Toyota he had been following; according to Senerchia's testimony, he then used his flashlight to illuminate his uniform and "yelled out 'Police. Stop. Turn your engine off now.'" Senerchia testified that defendant then "lurched forward" and tried to hit him with the car as he drove away.

Senerchia radioed for assistance while continuing to follow defendant's vehicle. The defendant was finally apprehended when he pulled into the parking lot of a restaurant; marked police vehicles pulled into the parking lot as well. Two other West Warwick officers who assisted in the arrest also testified at the trial. Officer Anthony Rozzero (Rozzero), one of the other officers dispatched to help arrest defendant, testified that defendant was "very belligerent." Another officer, John

Malloy (Malloy), testified that he was on overnight duty at the time in question, was called to the scene by Senerchia, and responded to Tomaselli's on Providence Street. According to Malloy, he helped Senerchia handcuff defendant, who was "shouting" and "somewhat uncooperative." Malloy testified that defendant told him he was aware that Senerchia was a police officer, but refused to stop his vehicle anyway. On cross-examination, Malloy said that Senerchia's car had no emergency lights, siren, or flashing grille lights. Malloy said he took a photograph of defendant's car showing a "dent and smudge mark" on the passenger side door. Malloy could not identify precisely when or how the mark on defendant's car had been made, but said the scuff "appeared to be from a foot" and it "appeared fresh." The photograph was entered into evidence as a full exhibit.

The defendant called Malloy to the stand again to testify for the defense about his experience responding to traffic accidents between motor vehicles and pedestrians. The defendant also took the stand in his own defense. On direct examination, defendant testified that he was a forty-seven-year-old Massachusetts resident. He said that on the day preceding the events in question, he had been in the Warwick area working as a carpenter. After completing that job, at some point later that evening, defendant drove a car belonging to his employer to a Chinese restaurant. At around 11:30 p.m., he drove away from the Chinese restaurant. Later, on cross-examination, defendant stated that he first left the Chinese restaurant on foot three hours before driving away. Once he got back into his car, defendant became lost while attempting to travel from the restaurant to his employer's house on Route 117. Because it was "so dark" and the street signs were confusing, he drove around between 11:30 and mid-

night trying to find Route 117. While attempting to find his way, continuing to "drive up one street, stop, look to the left, to the right," he noticed a car behind him flashing its lights on and off. The defendant testified that he had the windows up, the air conditioner on, and possibly the radio on, but heard "unintelligible" mumbling and screaming. Behind him, the other car tailgated "very close" and honked its horn. The defendant panicked and "thought [his] life was in danger when [he] saw somebody tailgating like that with high beams [and] yelling." The defendant testified that he had no recollection of the assault described by Senerchia. He said that he eventually pulled over because he "saw blue flashing lights" from the police cars called to the scene. The defendant recalled that he was relieved to see the police since he "was being pursued by a maniac, [he] thought." The defendant stated that Senerchia was verbally abusive, and defendant further denied telling Malloy that he had known all along that Senerchia was a police officer.

On cross-examination, the state questioned defendant regarding the time gaps in defendant's description of the night's events. The defendant revealed on this telling of his story that he left the Chinese restaurant on foot at around 8:30 p.m., leaving a period of three hours before he returned to his car. The defendant could not recall the name or location of the restaurant. The state elicited testimony from defendant that he "had a few beers, two" and filled the three-hour time gap by walking around for approximately three hours before getting back into his car at 11:30 p.m. The defendant denied being pulled over or pulling into a parking lot until the police cars arrived on the scene. He said that the confrontation with Senerchia "never happened." The state then requested a conference with the trial jus-

tice, out of the presence of the jury, regarding the possibility of calling Malloy as a rebuttal witness. The trial justice engaged in substantive discussion with both attorneys. The defendant reiterated the arguments he made during the hearing on the motion *in limine:* that the evidence was more prejudicial than probative. The state argued that Malloy's observations as to how defendant appeared during his arrest were "relevant to the defendant [testifying that] he had a couple of beers [and] went for a walk for three hours." The trial justice, stating that defendant "directly put * * * the credibility of [the statement regarding drinking a few beers] as well as his entire testimony in issue for the jury to decide," allowed the testimony. On rebuttal, Malloy testified that on the night in question, he observed that defendant "had an odor of alcohol about his breath," "his face was flush[ed]," "[h]is speech was slurred, and his eyes were bloodshot and watery."

The defendant was convicted by a jury on both counts. The defendant made a motion for a new trial, which was heard on April 16, 2004. The Court denied this motion, declaring that "[defendant's] whole story is not worthy of belief" and that defendant's testimony at trial "doesn't even pass the giggle test."

The defendant was sentenced on the first count to a ten-year suspended sentence, ten years of probation, mandatory anger management classes, substance abuse evaluation, mental health evaluation, and $1,801 in fines. On the second count, defendant was fined $1,000.

## II

### Analysis

The defendant presents two issues on appeal. First, defendant argues that the trial justice erred when he permitted the state to bring up Malloy's observations of defendant's appearance during rebuttal. Second, defendant asserts that a photograph of his car was improperly admitted, over defendant's objection, as evidence of marks left by Senerchia on defendant's car.

### A

### Admission of Testimony Regarding Intoxication

■ "[T]he purpose of rebuttal testimony is to explain, repel, counteract, or disprove the adverse party's evidence." *State v. Perez*, 882 A.2d 574, 586 n. 20 (R.I.2005). This Court adheres to the "principle that a decision to permit rebuttal testimony lies within the discretion of the trial justice and will not be overturned absent an abuse of that discretion." *Id.*; *see also State v. Stewart*, 663 A.2d 912, 927 (R.I.1995); *State v. Simpson*, 520 A.2d 1281, 1284 (R.I.1987).

■ However, "the prosecution may not manufacture an issue in the course of cross-examination for the purpose of impeaching the credibility of defendant by the use of evidence or testimony that would otherwise be inadmissible." *State v. O'Dell*, 576 A.2d 425, 429 (R.I.1990). We later held that a defendant who presented a defense of diminished capacity could be faced with testimony on rebuttal that otherwise would be inadmissible as a prior bad act; the issue in that case "was not invented by the prosecution or manufactured in the course of cross-examination" as it had been in *O'Dell. State v. Edwards*, 810 A.2d 226, 242 (R.I.2002).

We previously have said that cross-examination, while generally limited to the scope of the direct examination, permissibly may consist of "questions * * * designed to test the witness's accuracy, memory, veracity, credibility or bias." *State v.*

*Gordon,* 880 A.2d 825, 838 (R.I.2005). Indeed, this "principle is particularly compelling in a case in which the defendant has chosen to testify in his or her defense," *id.,* as defendant did in this case. As a witness in his own defense, defendant was subject to " 'a searching cross-examination to rebut not only the facts stated but *also the inferences and conclusions that might be drawn from such testimony.'* " *State v. Mattatall,* 603 A.2d 1098, 1111 (R.I.1992) (emphasis added).

*O'Dell* involved the use of rebuttal evidence that otherwise was inadmissible based on a discovery violation, *O'Dell,* 576 A.2d at 429, while this case involves testimony that the trial justice ruled to be excluded *unless* defendant himself opened the door. The state argues that the present case does not fit into the *O'Dell* framework, but rather into the mold of *State v. Sanders,* 609 A.2d 963 (R.I.1992). In *Sanders,* we held that the admission of otherwise inadmissible testimony on rebuttal was proper to rebut testimony given by defendant on direct examination. *Id.* at 965. The present case involves the use of previously inadmissible testimony to rebut testimony given on cross-examination, but it still does not fit the *O'Dell* proscription. The inadmissible evidence at issue in *O'Dell* resulted from a discovery violation.[1] In the case at bar, the evidence regarding defendant's potentially inebriated appearance was instead conditionally excluded upon motion by defendant, at which point the trial justice, as the record clearly demonstrates, left ample room for the excluded evidence to come in on rebuttal, stating prior to trial that "if the defendant takes the stand, depending on what he testifies to, he may very well open the door to

those other matters coming in[to] evidence as rebuttal." In *O'Dell,* we specified:

> "We recognize that evidence that may not be admissible in the prosecution's case in chief may be used in rebuttal in order to counter false statements made by the accused in the course of his direct testimony. Such a doctrine has been applied in the prosecution's utilization of illegally obtained evidence in rebuttal. *Walder v. United States,* [347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) ]. The use of such rebuttal evidence, however, has been limited by the Supreme Court of the United States to situations wherein the defendant has made a false statement in his direct testimony that can be exposed as untrue *by the use of the illegally obtained evidence.* Therefore, *such illegally obtained evidence may not be used in order to contradict defendant's testimony on an issue raised by the prosecution.* *Agnello v. United States,* [269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925) ]. In sum the prosecution may not manufacture an issue in the course of cross-examination for the purpose of impeaching the credibility of defendant by the use of evidence or testimony that would otherwise be inadmissible." *O'Dell,* 576 A.2d at 429 (emphases added).

The issue here—the gaps in defendant's story as presented on his direct examination, and the reasons for his lack of memory and denial on both direct and cross-examination—was not raised by the prosecution. "Raised by the prosecution," as defined by *O'Dell,* does not apply every time the state asks a question of a criminal defendant. Rather, *O'Dell* controls when the prosecution "manufacture[s] an issue." Here, the state did not manufacture an

1. The state in its brief attempts to draw a distinction between "inherently inadmissible" evidence—such as the discovery violation in

*O'Dell*—and the evidence in the present case. We decline to adopt this distinction.

issue, but rather questioned defendant in order to convince the jury of the incredible nature of the fragmented chronology defendant presented on direct examination. Once defendant filled in those pieces on cross-examination, he opened the door to rebuttal of those statements. The jury was then entitled to hear that, notwithstanding defendant's purported three-hour walk through the streets of West Warwick, he exhibited clear signs of intoxication at the end of those three hours.

*O'Dell* clearly contemplates the admission of illegally obtained evidence in rebuttal, not evidence previously excluded based on an analysis pursuant to Rule 403 of the Rhode Island Rules of Evidence. The holdings of *O'Dell*, while strict, still are relatively narrow. A defendant may not hide behind *O'Dell* by taking the stand in his own defense, presenting a defense on direct examination, and then protesting the state's zealous cross-examination on the same set of facts, followed by the presentation of a previously discussed rebuttal witness whose testimony, though potentially prejudicial, is also highly relevant. A trial is a search for the truth. It is not a game of chess in which a defendant who obtains a favorable ruling on a motion *in limine* may be permitted, upon taking the stand in his own defense, to present only portions of the tale and cry *O'Dell* when the state challenges his incomplete recollections. To apply *O'Dell* in this scenario is to permit a defendant to engage in strategically narrow testimony on direct examination such that the state is crippled in making its case, prevented from exercising its right to rigorously cross-examine a defendant who chooses to testify. Our holding in *O'Dell* does not apply universally, and it does not apply here.

■ An *O'Dell* analysis involves looking at the testimony in question to see whether the witness opened the door or, instead, whether the testimony to be rebutted was manufactured by opposing counsel. *O'Dell*, 576 A.2d at 429. In the case at bar, on direct examination, defendant did not testify to any alcohol consumption or, in fact, to any details of his snack stop or his after-work activities. Rather, he left wide open gaps in the evening's chronology. It was these gaps that permitted the state to seek elucidation on cross-examination, and it was defendant's admissions on cross-examination that, in turn, permitted the rebuttal. During cross-examination, defendant admitted that he consumed either "two" or "a few" beers. He volunteered that he then walked around West Warwick for three hours before he got into his automobile. At this point in the case, the jury was entitled to know that notwithstanding his alleged three-hour stroll, defendant appeared intoxicated when he was arrested. During the hearing on the motion *in limine*, which by definition took place pretrial, defendant had not yet presented the fragmented chronology that would open the door to the rebuttal evidence. The trial justice explicitly left an opening for the Malloy observations to come to light on rebuttal, and come to light they did, based on the gaps in defendant's direct testimony. A motion *in limine* is inherently conditional, and the trial justice's further review of the issue was proper. *See, e.g., State v. Torres*, 787 A.2d 1214, 1220 (R.I.2002) ("The preliminary grant or denial of an *in limine* motion 'need not be taken as a final determination of the admissibility of the evidence referred to in the motion.' "). The state's questions on cross-examination attempted to fill in the gap of defendant's testimony on direct examination, when defendant did not specify what he was doing between the end of his job and 11:30 p.m., the time he said he began driving around West Warwick. On direct examination, defendant referred to parking in the lot of a Chinese

restaurant, but gave no further information as to what he did between driving into the lot of that restaurant and driving out of it. The state's questions on cross-examination attempted to get defendant to elaborate about this time period.

The record discloses that defendant testified on direct examination that he could not recall the alleged assault of Senerchia. He stated that he did not remember pulling into any parking lot prior to his eventual stop at Tomaselli's, where he was pursued by police cars. The defendant also stated that he had no memory of any interaction with Senerchia prior to his arrest in the parking lot of Tomaselli's. The defendant could not account for the period between 8:30 p.m. and 11:30 p.m. other than to say that he was walking around and admiring the Rhode Island architecture. There was no manufactured issue here, as in *O'Dell*, but rather a line of questions logically flowing from defendant's inability to recall specifically any events leading up to his interaction with police in the parking lot of Tomaselli's.

The incomplete and rather counterintuitive time frame presented by defendant on direct examination opened defendant to a "searching cross-examination"; in turn, defendant's lack of memory, denial of pertinent events, and eventual implicit assertion of sobriety on cross-examination opened the door for the prosecution to introduce Malloy's testimony on rebuttal. The state's cross-examination was proper, and defendant himself opened the door to Malloy's rebuttal testimony. Therefore, the trial justice was acting within his discretion both in initially excluding the testimony while noting the possibility of later admission, and, ultimately, in admitting the testimony upon further motion.

The parties did not cite the following cases below or in their briefs; however, in light of the discussion at oral argument,

we pause to address *Handy v. Geary*, 105 R.I. 419, 252 A.2d 435 (1969) and its progeny as they relate to testimony regarding alcohol consumption. In *Handy*, this Court set forth a procedure to be followed when the issue of alcohol consumption is raised:

> "[B]efore evidence of drinking of intoxicants may be presented to the jury, the trial justice shall conduct a preliminary evidentiary hearing on this issue in the absence of the jury. If he [or she] finds that the evidence is such that different minds can naturally and fairly come to different conclusions on the question of intoxication, as we have defined that term, then and only then, may evidence of drinking be admitted under proper instructions for ultimate determination of such question by the jury under the same test." *Id.* at 431, 252 A.2d at 441–42.

In *State v. Amaral*, 109 R.I. 379, 386, 285 A.2d 783, 787 (1972), we extended the *Handy* procedure to criminal cases. The defendant did not present a *Handy* argument on appeal, and we do not consider it as a basis for reversal. We note, however, that while the trial justice in this instance did not follow the procedures outlined in *Handy* or *Amaral* by name, nor did he refer to that line of cases, the trial justice did, in fact, conduct a hearing on defendant's motion *in limine*—in which he weighed and considered the evidence related to defendant's possible intoxication and ruled that it would be inadmissible unless defendant opened the door through his own testimony. Additionally, when the state sought to revisit this issue after defendant's questionable tale, the trial justice once again met with counsel out of the presence of the jury to consider whether to admit the testimony in rebuttal. We deem this appropriate. If *Handy* and *Amaral* apply at all, the hearings conducted on the

record indicate that the trial justice did, in fact, act within the spirit of our decisions in the *Handy* line of cases.

## B

### Admission of the Photograph of Defendant's Car

The defendant maintains that the photograph of his car showing a "dent and smudge mark" on the passenger's side door was improperly admitted as a full exhibit. First, he asserts that the photograph was irrelevant because Malloy could not state precisely when the marks were made or otherwise tie them to the incident. Second, he argues that the photograph was improperly admitted because it was not authenticated by Senerchia—the only officer who allegedly made the mark.

■■ "All relevant evidence is admissible" under Rule 402 of the Rhode Island Rules of Evidence. Rule 401 of the Rhode Island Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." It is well settled law in this state that " 'decisions about the admissibility of evidence on relevancy grounds are left to the sound discretion of the trial justice; this Court will not disturb those decisions on appeal absent an abuse of discretion.' " *State v. Grayhurst*, 852 A.2d 491, 505 (R.I.2004). Upon review of the trial justice's decision, this Court will not hold that a trial justice abused his or her discretion " 'as long as some grounds to support the decision appear in the record.' " *Id.*

■ The state's case against defendant revolves around an alleged assault in which defendant drove purposefully toward Senerchia, who pushed and kicked at the approaching vehicle. Certainly the presence of a scuff mark thought to have been left by a foot, as Malloy testified, would tend to make more probable Senerchia's version of the night's events.

■ The photograph was authenticated by Malloy during his direct examination. Malloy testified that, immediately after Malloy, Senerchia and Rozzero subdued defendant and Senerchia and Rozzero left to drive defendant to the police station, Malloy photographed defendant's car. On the stand, Malloy identified the photograph marked for identification as the photograph he took that night. He said that the photograph was an accurate and true representation of the car on the night in question—a car defendant never denied was his. Although Malloy was not present during the alleged assault, he was present during defendant's arrest in the parking lot of Tomaselli's, the stop that defendant remembered. Directly upon defendant's departure, Malloy photographed defendant's car. The photograph was properly authenticated by Malloy.

We hold, therefore, that the photograph was relevant and the authentication was sufficient. Additionally, whatever questions might have been raised as to the relevance of the photograph were effectively cured by the defendant's thorough cross-examination of Malloy.

### Conclusion

For the reasons stated above, we affirm the decision reached below. The papers in the case shall be remanded to the Superior Court.

Justice FLAHERTY, dissenting.

I respectfully dissent from the holding of the majority in this case. To me, the critical issue to be determined is which of these parties "opened the door" so that the state could introduce evidence in rebuttal that the defendant had been drinking and

appeared to be intoxicated. In his pretrial order, the trial justice specifically excluded any evidence of the defendant's apparent consumption of alcohol. The trial justice did, however, rule that "if the defendant takes the stand, depending on what he testifies to, he may very well open the door to those other matters coming in evidence on rebuttal."

The defendant did take the stand in this case, but said nothing on his direct testimony about what he had had to drink; more importantly, he did not deny that he had been drinking. As a result, there was no evidence regarding the consumption of alcohol to rebut. The first reference to alcoholic beverages made its way into the record on cross-examination when the prosecutor asked the defendant:

"Q. What did your meal consist of?

"A. Egg roll.

"Q. Just an egg roll?

"A. Pretty much a snack.

"Q. Just a snack?

"A. Yes.

"Q. Did you wash it down with anything?

"A. There was water at the table. Yes.

"Q. Just water?

"A. Not just water.

"Q. What were you drinking?

"A. I had a few beers, two."

It was this testimony that the state was able to use as a magic wand to produce rebuttal testimony from other police officers, later present at the scene, who testified as to defendant's apparent intoxication.

In my view, this is precisely the type of trial tactic that was proscribed by this Court in *State v. O'Dell,* 576 A.2d 425 (R.I.1990). In *O'Dell,* we said that "[i]n sum the prosecution may not manufacture

an issue in the course of cross-examination for the purpose of impeaching the credibility of defendant by the use of evidence or testimony that would otherwise be inadmissible." *Id.* at 429.

I do not agree with the rationale of the majority that *O'Dell* does not apply to the matter before us simply because this case involves evidence excluded based on a motion *in limine,* while the precipitating event in *O'Dell* was a discovery violation. To me, the salient fact is that the trial justice had ruled the evidence inadmissible unless the defendant opened the door, and in my view the door was opened not by the defendant, but by the state. This very issue was again addressed by this Court in *State v. McDowell,* 620 A.2d 94 (R.I.1993). In *McDowell,* the defendant stood trial for a sexual assault on five teenage girls, all of whom had provided baby-sitting services to his family. Each of the victims testified against him. In addition, the state attempted to introduce the testimony of another alleged teenage victim, Pierce, who was not named in the indictment. On objection by defendant's counsel, the testimony of that witness was excluded.

After the prosecution rested, defendant took the stand. When he was cross-examined, the prosecutor asked him whether he ever had sexually assaulted or directed sexually inappropriate comments toward Pierce. When the defendant denied such conduct, the trial justice allowed Pierce to take the stand and offer rebuttal testimony of sexual assaults against her that were not charged in the indictment.

Relying on *O'Dell,* this Court reversed, stating "[t]he defendant did not mention Pierce on direct examination. Yet the prosecution questioned defendant about her on cross-examination and then used rebuttal testimony to introduce Pierce's otherwise inadmissible evidence. This

amounts to reversible error." *McDowell*, 620 A.2d at 96.

In my opinion, the situation in *McDowell* is precisely what confronts us here. Because of its extremely prejudicial nature, the trial justice ruled that evidence of Carvalho's drinking would not be admissible by the state in its direct case. However, the state impermissibly revived the issue by bringing it up on cross-examination and then rebutting it.

Even though the defendant's testimony about his three-hour stroll through the Town of West Warwick may have been implausible, effective cross-examination could have been conducted without questioning him about what alcohol he had imbibed and then bringing forward rebuttal witnesses to suggest that perhaps he had indulged in more.

Our case law has been particularly vigilant with respect to the incendiary nature of evidence involving the drinking of alcohol. In *Handy v. Geary*, 105 R.I. 419, 252 A.2d 435 (1969), we strictly limited the introduction of such evidence.

"Because of the potential prejudice to a litigant by the admission of this kind of evidence, and in order to give guidance to trial justices in the trial of civil actions where this question arises, we are today announcing a new procedure which we believe will better serve the ends of justice. Whenever the issue of intoxication is raised, before evidence of drinking of intoxicants may be presented to the jury, the trial justice shall conduct a preliminary evidentiary hearing on this issue in the absence of the jury. If he finds that the evidence is such that different minds can naturally and fairly come to different conclusions on the question of intoxication, as we have defined that term, then and only then, may evidence of drinking be admitted under proper instructions for ultimate determination of such question by the jury under the same test." *Id.* at 431, 252 A.2d at 441–42.

This Court's rationale in *Handy* was extended to criminal cases in *State v. Amaral*, 109 R.I. 379, 285 A.2d 783 (1972).[2] In *Amaral*, the defendant was charged with driving while intoxicated and with reckless driving, death resulting. However, the drunk-driving charge was dismissed in the District Court, and he went to trial before a jury in the Superior Court solely on the charge of reckless driving, death resulting. At trial, the state was permitted to introduce evidence that the defendant had been drinking on the night in question.[3] When he appealed his conviction, we addressed the issue of whether the state should have been "barred from introducing evidence of a defendant's drinking in a trial for reckless driving, death resulting, where the charges of operating under the influence have been dismissed in a previous trial in the District Court involving the same accident." *Amaral*, 109 R.I. at 381, 285 A.2d at 784. This Court reversed the conviction, relying on its reasoning in *Handy*. In so doing, we explained that:

drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which proves unfitness to drive.").

---

**2.** In *Handy v. Geary*, 105 R.I. 419, 252 A.2d 435 (1969), our analysis was guided by our decision in *Peters v. Gagne*, 98 R.I. 100, 199 A.2d 909 (1964), in which we similarly held that evidence of alcohol consumption was prejudicial, and not admissible, because whether the plaintiff was intoxicated was not at issue. *See also Fisher v. Dye*, 386 Pa. 141, 125 A.2d 472, 476 (1956) ("[T]he mere fact of

**3.** The prosecutor also referred to the defendant's drinking and driving in his opening statement.

"We are firmly convinced that the reasoning behind the decisions in those cases applies equally in criminal cases. Fairness demands that criminal trials be free of unduly prejudicial matter and of matter which has a direct tendency of creating confusion in the minds of the jurors by introducing another issue, namely, whether defendant was intoxicated, when intoxication is not an issue in the case." *Amaral,* 109 R.I. at 386, 285 A.2d at 787.

As in *Amaral,* defendant in this case was not tried on a charge of drunk driving.

Here, only the complaining police officer and the defendant were present when the events leading to the charges took place. In essence, the jury had to choose between Officer Senerchia's version of events or the defendant's version. It was, therefore, enormously, and I believe impermissibly, prejudicial to the defendant for the jury to hear testimony from other witnesses that the defendant obviously had been drinking. That testimony undoubtedly was devastating to the defendant's credibility and cannot be construed as harmless error.

For these reasons, I would vacate the judgment of conviction of the Superior Court.